RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2007 JUL 13 PM 5: 54

NANCY M.
MAYER-WHITTINGTON
CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

David Copeland-Jackson,
    Plaintiff,

v.                    Case Number: 1:07-cv-01124 ESH

Joseph Cutlip,
    Defendant.

## Additional Support to Memorandum to Show Cause

Plaintiff submits this additional support to supplement his Memorandum to Show Cause Why Venue is Proper in this District, and Why this Court may Exercise Personal Jurisdiction over Defendant, and Why this Suit is Not Barred by the Applicable Statute of Limitations that was filed on July 11, 2007. This additional support should relate back to the original memorandum to show cause filed on July 11, 2007.

Plaintiff submits the Affidavit of Peter Brandel with the two attached exhibits. Mr. Brandel testifies that on May 8, 2007 Mr. Cutlip told Mr. Brandel that the plaintiff had engaged in homosexual activity with Cutlip and Joshua Helms. Cutlip laughingly told Brandel that there were "too many people to count" when Brandel asked how many people had Cutlip told that the plaintiff had engaged in sexual activity with Cutlip and Joshua Helms. After further inquiry, Cutlip admitted that all of his statements that the plaintiff engaged in sexual activities with Cutlip and Joshua Helms were false.

Attached to Mr. Brandel's affidavit is the redacted affidavit of Mr. Cutlip in an unrelated matter. In that affidavit, Mr. Cutlip himself testifies that the plaintiff did not have sexual contact of any kind with Cutlip or Joshua Helms. Also attached to Mr. Brandel's affidavit is the affidavit of Charlotte McNaull, who testifies that Mr. Cutlip did endorse the affidavits bearing his signatures.

Plaintiff submits the Affidavit of Barry Martin. Mr. Martin testifies that he received a handwritten letter in his D.C. mailbox in March of 2007 and that part of the letter was written on the back of a piece of mail that contained an address from Fessenden

RECEIVED

JUL 1 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

Street, NW. Mr. Martin testifies that the letter indicated that Mr. Copeland-Jackson was homosexual and had deviant sexual contact with two people. Mr. Martin testifies that the partnership between Martin and the plaintiff was terminated as a result of the letter, and that the plaintiff lost the potential of earning a lot of money over a usual ten year investment.

Plaintiff calls attention to the Affidavit of Xavier Justice that was filed with Plaintiff's original memorandum to show cause. Mr. Justice is a private investigator and testifies that Mr. Cutlip has family living at 4322 Fessenden Northwest, D.C. and that Cutlip lives at that address when he's working in the area. Mr. Justice testifies that Mr. Cutlip was in D.C. at the Fessenden address when Mr. Martin received the letter suggesting that Plaintiff engaged in homosexual behavior with two male persons.

## Conclusion

The plaintiff contends that the foregoing information supports the averments in Plaintiff's complaint.

This Court may now find by a preponderance of the evidence that this Court may exercise jurisdiction over the defendant, and that, at a minimum, defendant's defamatory acts in March and May of 2007 are actionable and not barred by the statute of limitations, and finally, that this Court is an appropriate venue to determine this case on the merits when the defendant has minimal contacts with the District of Columbia and at least one actionable event occurred within the District of Columbia and this Court is the most convenient for the availability of the witnesses and evidence and would not be unduly burdensome for the defendant to properly defend himself, if he chooses.

Respectfully Submitted

David Copeland-Jackson
Plaintiff

2

Certificate of Service

I certify that a true copy of this memorandum and attachments were sent by ordinary mail with postage prepaid to Joseph Cutlip at 273 Lee Avenue, Ashland, Ohio 44805 on this 12 day of July, 2007.

*David Copeland-Jackson*
David Copeland-Jackson
Plaintiff

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2007 JUL 13 PM 5: 51

NANCY M.
MAYER-WHITTINGTON
CLERK

**United States District Court**
**District of Columbia**

David Copeland-Jackson,

    Plaintiff,

v.                             Case Number: 1:07-cv-01124 ESH

Joseph Cutlip,

    Defendant.

### *Affidavit of Peter Brandel*

I, Peter Brandel, first, being duly sworn according to law and under the penalty of perjury do hereby depose that the following information is true and accurate.

1. My name is Peter Brandel and I live at 523 Cline Avenue, Mansfield, Ohio 44907.

2. On May 8, 2007 Mr. Joseph Cutlip and I were in a conference in relation to an independent, private matter. In the process of discussing that separate issue, Mr. Cutlip stated to me that Mr. Copeland-Jackson was a "sexual pervert" and had participated in "deviant sexual activity" with Joshua Helms and with Mr. Cutlip. Mr. Cutlip said that Mr. Copeland-Jackson had "performed oral sex" on Mr. Cutlip and Joshua Helms.

3. Mr. Cutlip admitted that he was the one who had previously initiated the story with Robert Renfroe and Paul Tracy. I asked Mr. Cutlip how many people that he had said such things to about Mr. Copeland-Jackson other than me, Robert Renfroe, and Paul Tracy. Mr. Cutlip laughingly said that he didn't know and there were "too many to count."

4. As the conversation progressed, I vigorously challenged Mr. Cutlip on his inaccuracies and misrepresentations. Mr. Cutlip's allegations about Mr. Copeland-Jackson were incredible and lacked the ring of truth. Mr. Cutlip stopped talking and looked at me and candidly stated that he was "sorry for lying" on Mr. Copeland-Jackson. Cutlip acknowledged that people were likely to believe him over Mr. Copeland-Jackson since this area is overwhelmingly white, and Mr. Copeland-Jackson is black.

5. Mr. Cutlip became emotional and I asked Mr. Cutlip why he was going around telling people that Mr. Copeland-Jackson had participated in deviant sexual activity with Mr. Cutlip if it were not true. Mr. Cutlip told me that Mr. Copeland-Jackson did not have sexual contact of any kind with him, at any time- in any

1

place. Mr. Cutlip also told me that he did not participate in or witness Mr. Copeland-Jackson having sexual contact on any kind with Joshua Helms, at any time- in any place.

6. I asked Mr. Cutlip how this whole thing got started. Mr. Cutlip told me that Mr. Cutlip initially told Robert Renfroe and Paul Tracy that Mr. Copeland-Jackson had participated in sexual activity with Mr. Cutlip and Joshua Helms. Mr. Cutlip told me that Mr. Cutlip told Renfroe and Tracy this in order to discredit Mr. Copeland-Jackson regarding a separate private matter.

7. I did witness Mr. Cutlip signing an affidavit also on May 8, 2007 wherein Mr. Cutlip admitted that Mr. Cutlip lied to me, and also to Robert Renfroe and Paul Tracy when Mr. Cutlip stated that Mr. Copeland-Jackson had sexual activity with Mr. Cutlip and Joshua Helms (see attached *Exhibit A*). I redacted the affidavit to exclude other information not immediately necessary for the purposes of this situation. The notary public that endorsed Mr. Cutlip's affidavit later certified that Mr. Cutlip did in fact sign the affidavit under his own free will and that no one forced him to sign the affidavit (see attached *Exhibit B*).

8. I saw several newspaper articles in two different, local newspapers that ran Mr. Copeland-Jackson's face on the front page about the scandal. Mr. Copeland-Jackson did lose his job as an administrator at a local university. Because the bad publicity was so strong, Mr. Copeland-Jackson was also forced to re-locate.

_____
Peter Brandel

Sworn to and Subscribed in My Presence on this 26th day of June, 2007.

_____
Notary Public

SUSAN N. THOMPSON
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires
12-5-09

2

*Exhibit A*

### *Affidavit of Joseph P. Cutlip*

I, Joseph P. Cutlip, first, being duly sworn according to law and under the penalty of perjury, do hereby depose and assert that the following information is true and accurate.

1. My name is Joseph P. Cutlip and I live at 273 Lee Avenue, Ashland, Ohio 44805.

2. I have considered and fully understand the meaning of this statement; and, I have knowingly, intelligently, and voluntarily made this statement without reservations.

3. I intend this statement for all legal purposes to clarify (or otherwise take the place of) all other public and private communications made by, or ascribed to, me concerning these subjects.

4. I have never reported or suffered from, or otherwise have been diagnosed nor treated for, a psychological or mental condition, disorder, or disability of any kind as a minor or as an adult that has substantially impaired my functioning.

5.

6.

7.

8.

9.

10.

   accused Mr. Jackson of performing sex acts on us

11. Mr. Jackson did not have sexual contact of any kind with me- at any time, in any place. I did not observe Mr. Jackson having sexual contact of any kind with Joshua Helms- at any time, in any place.

12.

13.

14.

15.

Further, Affiant sayeth nought.

                                   _Joseph P. Cutlip_
                                   Joseph P. Cutlip

_5-8-07_            _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_
Date               Social Security

Sworn to and Subscribed in My Presence on this _8th_ day of _May 2007_, 2007.

                                          _Charlotte M. McNaull_
                                          Notary Public

Charlotte S. McNaull
Notary Public, State of Ohio
My Commission Expires 4/3/2012



*Exhibit B*

State of Ohio

        ss.

County of Ashland

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2007 JUL 13 PM 5:51

NANCY M.
MAYER-WHITTINGTON
CLERK

### Statement of Charlotte S. McNaull

Pursuant to section 1746 of title 28 of the United States Code, I declare (or certify, verify, or state) under penalty of perjury that the following is true and correct.

1. My name is Charlotte McNaull and I am a duly commissioned notary of the state of Ohio.

2. I have reviewed the attached exhibit, Affidavit of Joseph P. Cutlip.

3. Mr. Cutlip did appear before me on May 8, 2007 with satisfactory proof to establish his identity and did endorse the jurat and sign the document in my presence. I did ask Mr. Cutlip if he was signing under his own free-will ~~and without duress. I explained that duress meant whether~~ anyone was forcing him to sign or not. Mr. Cutlip stated to me that he was signing under his own free-will ~~and without duress~~.

4. The document does reflect my official signature and bears my official notarial seal.

Executed on 18th day of June, 2007.

*Charlotte S. McNaull*

Charlotte S. McNaull

Address:

1577 CR 1575

Ashland, OH 44805

Charlotte S. McNaull
Notary Public, State of Ohio
My Commission Expires 4/3/2012

DALE CITY

STATE OF VIRGINIA

ss.

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2007 JUL 13 PM 5:52

NANCY M.
MAYER-WHITTINGTON
CLERK

### *AFFIDAVIT OF BARRY MARTIN*

I, Barry Martin, first being duly cautioned on my oath under the penalty of perjury, do hereby depose the following true statements:

1. I am Barry Martin and I live at 3487 Cranmer Mews, Dale City, Virginia 22193. I regular conduct business in Washington, D.C. I am a home investor. I purchase homes, renovate them, and then re-sell them. I have been in this business for over twenty-seven years.

2. I often put ads in the newspapers and online for private partners with a certain credit score and a minimal of five thousand dollars in investment capital to support the renovation projects. The financial return to the private partners-investors depends on the initial investment and the term of the investment.

3. Private partners generally must also not have any pending judgments, involvement in adversarial litigation, bankruptcies, or other issues that may negatively reflect on the person's reputation and status. In order to secure a partner's investment, a lien is placed against the improved property in the partner's name and the buyer satisfies the lien according to terms in the purchase contract. I have found from my professional experience that buyers in the Washington, D.C. region tend to be conscious, cautious, and take special care that any person that may have any kind of interest in their property are respectable. So, buyers generally request the background information on the private partners-investors. In the past, I have been unable to sell improved properties when buyers decide that the private partners-investors have issues in their histories that buyers perceive will somehow reflect poorly on them. If partners-investors have historical issues that have "scandal potential," I will disqualify them from the investment. A partner-investor does forfeit or otherwise lose any investment if potentially scandalous information is later discovered about a partner-investor that was not initially disclosed by the partner-investor.

4. In December, 2006 Mr. Copeland-Jackson and I contracted on properties that I purchased in D.C. and that I intended to improve. I already had buyers lined up to purchase the properties. Mr. Copeland-Jackson was to invest ten thousand dollars, with interest compounded at a fifteen percent annual percentage yield. In my professional experience, buyers generally buy-out investment liens within ten to twelve years after acquisition of the improved property with a private partner-investment lien.

5. Mr. Copeland-Jackson was an excellent candidate to be one of my private partners- investors. He's educated and affable. He had a good credit score and

1

intended to invest above the minimal amount. He's a native and has a good heart. In this instance, which was very rare in all the years I've been in this business, the buyers of the properties requested to meet with Mr. Copeland-Jackson and invited him to be a part of the total renovation and acquisition process. Mr. Copeland-Jackson did visit the renovation site on occasion.

6. Sometime in March of 2007, I received an anonymous hand-written letter that was sent to my D.C. mailstop box. I clearly remember that the first two pages were written on yellow legal pad paper, while the third page was white, which had the continuation of the anonymous letter handwritten on the back of some mass mailer advertisement for Toyota. I remember that the front of the Toyota advertisement was addressed to the homeowners of an address on Fessenden Street in Northwest, D.C. There wasn't a name as part of the address and I don't really remember the exact house number. It was interesting because the house that I was improving and Mr. Copeland-Jackson was my partner-investor was one street over from Fessenden.

7. The anonymous letter told me to dig into Mr. Copeland-Jackson's background because he was "homosexual" and had "deviant sexual contact" with two male persons. I don't really remember the names of the men. I brought the letter to Mr. Copeland-Jackson's attention. Mr. Copeland-Jackson was immediately emotionally impacted after he read the letter. I do remember that Mr. Copeland-Jackson told me some information about someone who had caused him some trouble by falsely accusing him of having homosexual contact in an attempt to discredit him. I don't remember the person's name that Mr. Copeland-Jackson told me that caused this scandal.

8. Due to the letter, however, I told Mr. Copeland-Jackson that I could not allow him to be a partner-investor. I immediately wrote him a check for his investment money and Mr. Copeland-Jackson left. I had no use for and ultimately did not keep the anonymous letter.

9. I had not spoken to Mr. Copeland-Jackson since March, 2007. He contacted me recently and asked that I provide him with this statement on what I remember. I can state that I remember some details, but have forgotten other specifics. I rejected Mr. Copeland-Jackson's investment offer and partner-investor relationship after I received the anonymous letter. Mr. Copeland-Jackson certainly would have made a lot of money over the ten year investment if Mr. Copeland-Jackson could have continued as a partner-investor.

Further, Affiant sayeth naught.

_____
Barry Martin

2

Sworn to and Subscribed in My Presence on this ___ day of June, 2007.

Notary Public
Comm Exp 12-01-2010

3