UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

David Copeland-Jackson,
    Plaintiff,

v.                                          Case Number: 1:07-cv-01124 ESH

Joseph Cutlip,
    Defendant.

### Notice of Additional Authority and Supplemental Argument

Plaintiff offers a supplemental argument and gives notice that he relies on **_Mwani v. Bin Ladin_** (D.C. Cir. 2005) 368 U.S. App. D.C. 1; 417 F.3d 1 as additional authority for this Court to exercise jurisdiction over the defendant in this case and determine that venue is proper in this Court.

In **_Mwani v. Bin Ladin_** (D.C. Cir. 2005) 368 U.S. App. D.C. 1; 417 F.3d 1, the United States Court of Appeals for the District of Columbia Circuit reasoned that a court should satisfy itself that it has personal jurisdiction before entering judgment against a defendant, and when ruling upon personal jurisdiction without an evidentiary hearing, a court ordinarily demands only a prima facie showing of jurisdiction by the plaintiffs (citing **_Edmond v. United States Postal Serv. Gen. Counsel_** (D.C. Cir. 1991) 292 U.S. App. D.C. 240; 949 F.2d 415 at 424). The Court continued that to establish a prima facie case, plaintiffs are not limited to evidence that meets the standards of admissibility required by the district court. Rather, they may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain.

The plaintiff has presented to this Court affidavits and other written materials to establish that the defendant has committed at least one actionable deed within the District, and that the defendant has minimal contacts here by his seasonable work and residence with family in the city.

The **_Mwani_** court also reasoned that because default proceedings are not a court's final say on a matter, a defendant is always free to ignore the judicial proceedings, risk a default judgment, and then successfully challenge that judgment on jurisdictional grounds

RECEIVED
JUL 1 6 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

in a collateral proceeding. In this case, Mr. Cutlip may have chosen to ignore the proceedings here as part of his strategy.

Further, the *Mwani* court indicated that a defendant may waive personal jurisdiction. Mr. Cutlip would waive personal jurisdiction if he would contest this Court's jurisdiction over him, but failed to state an appropriate venue. In this case, pursuant to *Mwani*, this Court could utilize federal Rule 4(k)(2) to exercise jurisdiction over Mr. Cutlip. It should be noted that Mr. Cutlip has been properly served with the complaint and summons and presently has not contested the jurisdiction of this Court.

Finally, the *Mwani* court established that a court could assert specific jurisdiction over an out-of-state defendant who may not have physically entered the forum, or has not otherwise consented to suit there, if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities; and, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

In the case, sub judice, the defendant created a lie that the plaintiff had homosexual conduct with the defendant and Joshua Helms. The defendant began by telling his lie to Robert Renfroe and Paul Tracy and then recklessly continued to tout the lies to others even well after the plaintiff sustained damage and relocated to mitigate collateral consequences that resulted from the defendant's defamation. Plaintiff suffered loss of his reputation, social status, career and earning capacity, which had been and could have continued to earn him seventy-five thousand dollars a year until he reached retirement from the job he lost as a result of the defamation.

While the plaintiff may not be able to ascertain exactly when the defendant began touting his lies and the names of all the people that the defendant told his lies to (or were exposed to the lies due to media coverage), it is clear and certain that the defendant's actions were part of a pattern of continuous defamatory conduct that apparently became routine for the defendant until the last of the known injuries occurred on May 8, 2007. Continuing this routine pattern of defamatory conduct, the defendant specifically directed his defamation at the plaintiff by telling Barry Martin in writing in March of 2007 and by

2

orally telling Peter Brandel on May 8, 2007 that the plaintiff had sexual conduct with Cutlip and Joshua Helms. The defendant's defamatory conduct relating to Martin and Brandel toward the plaintiff in this forum caused specific damages.

Mr. Martin terminated the plaintiff's contractual relationship with Martin, which subjected the plaintiff to a loss of contracted compounded interest on ten thousand dollars at fifteen percent A.P.Y. over ten years. Mr. Brandel, under orders from his supervisors, then reversed his recruitment of the plaintiff as a franchise owner in the Conklin Corporation for the Washington, D.C. area, which could have conservatively earned the plaintiff seventy-five to one hundred thousand dollars annually over twenty-five years.

Whether made in Ohio or Washington, D.C., the defendant's defamatory conduct was routinely directed at the plaintiff, and was intentionally and recklessly continued until March and May of 2007 while the plaintiff continuously domiciled in the District of Columbia. This court can exercise jurisdiction over the defendant based on the single defamatory act that occurred in Washington, D.C., and/or this Court can independently exercise jurisdiction over the defendant in this venue under *Mwani* for acts occurring abroad since his defamatory conduct was routinely and consistently directed at the plaintiff while the plaintiff domiciled in this forum.

Tolling of Statute of Limitations

Plaintiff contends that any statute of limitations only governing his defamation claims relating only to Robert Renfroe and Paul Tracy potentially made before June 22, 2006 was tolled up until May 8, 2007 when he became aware of the facts that provided the basis for defamation claims. Plaintiff was uncertain whether it was the defendant who actually committed the defamatory acts due to the defendant's actions to conceal his defamatory conduct which prevented the plaintiff from readily determining the actual facts that formed the basis for the defamation claims (see *Jankovic v. Int'l Crisis Group* (D.D.C.2006) 429 F. Supp. 2d 165; 2006 U.S. Dist. LEXIS 24520; *Johnson v. Long Beach Mortg. Loan Trust 2001-4* (D.D.C. 2006) 451 F. Supp. 2d 16; 2006 U.S. Dist. LEXIS 54264; *Linguex, Inc. v. Murphy* (D.D.C. 1994) 1994 U.S. Dist. LEXIS 8821 holding that the discovery rule applies to defamation cases, "The discovery rule is most

3

applicable in situations where the fact of injury may not be readily discernible at the time when actually incurred").

This Court must take notice that the plaintiff was unable to determine whether it was the defendant, or only the media, that had initiated the defamatory statements because both Robert Renfroe and Paul Tracy suddenly moved out of the state and immediately became unavailable after it was being reported by the media that Renfroe and Tracy were told by the defendant that the plaintiff had engaged in "inappropriate activities" with the defendant and Joshua Helms. Plaintiff attempted to find out (1) if the defendant did make the statements, and (2) what behavior had the defendant claimed was committed by the plaintiff. When the plaintiff attempted to contact the defendant about the media reports, the defendant purposefully refused to meet, or otherwise answer the plaintiff's inquiry. The defendant then relocated and changed addresses frequently and quickly made himself unavailable, in his attempt to conceal his defamation, up until May of 2007. The plaintiff could not act solely on media reports considering that the media had misconstrued or otherwise misrepresented information in the past. When Renfroe, Tracy, and the defendant made themselves unavailable, Plaintiff could not reasonably determine the facts, which form the underlying basis for the defamation claims; that is, the defendant actually alleged that the plaintiff engaged in homosexual activity with the defendant and Joshua Helms. It was not until May 8, 2007 that the defendant himself finally acknowledged to Peter Brandel that the defendant had in fact initiated these lies by telling Renfroe and Tracy. Plaintiff states that *any statute of limitations* for the defendant's defamatory conduct toward the plaintiff relating to *at least* Renfroe and Tracy before June 22, 2006 was tolled until May 8, 2007 when the defendant admitted in two separate affidavits that he lied and admitted that he started the defamatory acts with Renfroe and Tracy- whenever they were first committed. It is now the defendant's duty to show this court why any statute of limitations relating to Renfroe and Tracy should not be tolled.

Therefore, Plaintiff contends that the defendant is liable on at least four acts of defamation when the defendant communicated to Robert Renfroe, Paul Tracy, Peter Brandel (May 8, 2007), and Barry Martin (March, 2007) that the plaintiff engaged in deviant homosexual activity with the defendant and Joshua Helms.

4

## Conclusion

In one defamation suit, the plaintiff sued an Ohio entity based on diversity of jurisdiction, and in that case, the United States Supreme Court reasoned (see <u>**Keeton v. Hustler Magazine**</u> (1984) 465 U.S. 770; 104 S. Ct. 1473) that:

a. each communication of the same defamatory matter by the same defamer, whether to a new person or to the same person, is a separate and distinct publication, for which a separate cause of action arises; and,

b. any defamation occurring abroad may also be litigated in a single forum based on the statute of limitations of that forum to provide a forum for efficiently litigating all issues and damages claims arising out of defamation in a unitary proceeding. This rule reduces the potential serious drain of defamation cases on judicial resources; and,

c. a state has an interest in exercising judicial jurisdiction over those who commit torts within its territory because torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection, by providing that a tort-feasor shall be liable for damages which are the proximate result of his tort; and,

d. the general course of defendant's conduct in circulating the defamation by purposefully directing it at the forum state inevitably affects persons in the forum state; and,

e. while the tort of defamation is generally held to occur wherever the offending material is circulated, the reputation of the defamation victim may suffer harm even in a forum in which he has hitherto been anonymous. The defamatory communication may create a negative reputation among the residents of a jurisdiction where the plaintiff's previous reputation was, however small, at least unblemished; and,

f. false statements of fact harm both the subject of the falsehood *and* the recipients of the statement. States may rightly employ its defamation laws to discourage the deception of its citizens. There is no constitutional value in false statements of fact.

This Court may exercise personal jurisdiction over the defendant in this case and this venue is appropriate to determine whether the defendant committed defamation when the defendant made the false, scandalous statements that the plaintiff engaged in sexual activities with the defendant and Joshua Helms. The defendant committed defamatory

acts when he communicated his lies to Barry Martin in writing in March 2007 and when he orally told Peter Brandel on May 8, 2007. Notwithstanding whether the defendant was physically in this district or had minimal contacts with it, the defendant did direct his action toward this venue.

The defendant endorsed two affidavits that establish that the defendant did in fact make the false, scandalous statements, and that he did make the statements to Peter Brandel on May 8, 2007, and to Robert Renfroe and Paul Tracy at undetermined dates. The defendant has not stated exactly when he began communicating his lies about the plaintiff. The statements to Renfroe and Tracy, even if assuming arguendo were made before June 22, 2006, survive any statue of limitations bar due to the plaintiff's inability to readily determine the actual statements made by the defendant when the Renfroe and Tracy became unavailable, and the defendant purposely made himself unavailable until May 8, 2007 in an attempt to conceal his defamatory conduct.

This Court may allow, and the plaintiff is entitled to litigate all defamation claims against the defendant in this forum in order to protect the plaintiff's good name here and abroad, and to prevent further tortious conduct by the defendant made against the plaintiff and the others that the defendant exposes to the conduct.

Respectfully Submitted

David Copeland-Jackson
Plaintiff

Certificate of Service

I hereby certify that a true copy of this notice of additional authority and supplemental argument was sent by ordinary mail with potage pre-paid to Joseph Cutlip at 273 Lee Avenue, Ashland, Ohio 44805 on this 13 day of July 2007.

David Copeland-Jackson
Plaintiff

6