# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

David Copeland-Jackson,

      Plaintiff,

v.                              Case Number: 1:07-cv-01124 ESH

Joseph P. Cutlip,

      Defendant.

### _Motion to Strike and Response to the Order to Vacate Judgment_

        Plaintiff respectfully objects to the court's decision to vacate the consent judgment pursuant to the ex parte communications and to the court's consideration of the filings from Ramona Rogers and moves this court to strike the ex parte filing from the record of this case.  A memorandum in support is attached.

                                   Respectfully Submitted

                                   David Copeland-Jackson
                                   Plaintiff

<div align="center">Certificate of Service</div>

I hereby certify that a true copy of this response was sent by ordinary mail with postage prepaid to Joseph Cutlip at 273 Lee Avenue, Ashland, Ohio 44805 on this 16 day of August, 2007.

                                   David Copeland-Jackson
                                   Plaintiff

RECEIVED

AUG 1 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

### *MEMORANDUM IN SUPPORT*

Plaintiff offers the following arguments in support of his motion to strike and his objection to this court's consideration of the filings by Ramona Rogers and the vacating of the final judgment.

As an initial issue, the plaintiff must clearly advise the court that he does not know, has never heard of, and has never had any communication with Ramona Rogers and/or Geoff Thomas. Neither of these figures has ever contacted the plaintiff in order to fulfill their duty to confer as required by the local rules. The plaintiff rejects any innuendo or the characterization that the plaintiff has committed, invited, has knowledge or notice of, or even permitted misconduct before this federal court.

### *The defendant failed to timely raise objections or defenses...*

The defendant did receive several notices, including one for default, ***directly*** from this court and the defendant never raised any issue as to lack of service or of potential defenses. The defendant must establish how the notices sent directly to him by the court throughout this case were not sufficient to notify him of this action assuming arguendo, that he did not receive the complaint. Any suggestion raised by the defendant in this court that he didn't receive the complaint after the final judgment has been entered, and apart from an appeal or relief pursuant to 60B, is both disingenuous and improper.

### *Neither Rogers, Thomas, nor the state of Ohio may present arguments...*

Ramona Rogers is not licensed to practice law before the federal courts in the District of Columbia; and therefore, is not an officer of any of the courts in this jurisdiction. Rogers has not properly filed an appearance, sought leave to enter the case, nor established that she represents the defendant. *Also, the defendant himself fails to state that Rogers represent him or that he joins her arguments.* Neither Rogers nor the state of Ohio are parties to this case, and therefore, lack standing to offer arguments and raise objections as they have in this civil suit.

The tenor of the letter and affidavit seems to suggest that the plaintiff was involved in some sort of conduct that would vitiate the final judgment entered and/or would/should invoke the court's corrective sanctions pursuant to Rule 11 of the Federal

2

Rules of Civil Procedure. This court is not presently sitting in habeas or post-conviction relief proceedings, and this defendant is not a state witness. The plaintiff's complaint does establish a cause of action for the defendant's actions directed at the plaintiff in March and May of 2007. Ohio has no authority to represent a private citizen in a federal personal injury suit between another private citizen when it was not enjoined as a party.

Rogers, Thomas, and the state of Ohio are trying to hide this defendant under a blanket by confounding the procedures and confusing the issues. The plaintiff calls the court to take notice that the defendant himself has failed to establish or to personally state on the record that he was not served with a copy of the complaint. Had he personally done so, then the defendant's signature could be summarily assessed by the court to establish that the defendant's signature is consistent with the other documents in this case that reflect the defendant's endorsement, which belies his efforts. The defendant has actively participated in the proceedings since his default and was free to raise his factual and legal claims.

This court cannot overlook the fact that the defendant *himself*, who is an actual party in this case, is not raising such arguments, and that the defendant has not demonstrated that the plaintiff has participated in or invited any form of misconduct before this federal court that would overcome the presumption of regularity of proceedings and permit this court to grant the defendant such relief so extraordinary as vacating the final judgment.

### *This Court may not act based on improper ex parte communications...*

Plaintiff contends that Ramona Rogers did not serve a copy of her filings on the plaintiff contrary to, and a certificate of service was not filed to indicate that service was properly effectuated consistent with, Rule 5 of the Federal Rules of Civil Procedure.

Moreover, Rule 5.1 of the local rules for the United States District Court for the District of Columbia clearly establishes that correspondence shall not be directed to the judge.

The letter and affidavit constitute an improper ex parte communication, and should be summarily rejected. The ex-parte filing with its dubious content prejudiced the plaintiff in that the court relied on it to vacate a final judgment.

Rogers, Thomas, the state of Ohio, and the defendant actually attempts to raise defenses, which cannot now be made, or accepted and considered absent seeking relief through 60B.

### *The ex parte filing contains material misrepresentations and is insufficient to support relief...*

The plaintiff assumes that the court considered the ex parte filing since the final judgment was entered and this court has vacated that judgment and ordered an evidentiary hearing. Plaintiff therefore assumes that the letter from Ramona Rogers and the attached affidavit was considered by the court to have raised grounds for relief under rule 60(B) of the Rules of Civil Procedure in order to vacate its judgment since the court did not disregard the alleged error or defect as harmless error pursuant to Rule 61.

This court could interpret the letter as raising claims under the 'fraud', 'misrepresentation', 'other misconduct', 'void judgment', 'no longer equitable', or 'any other justifiable reason' provisions of the rule. Plaintiff states that his actions before this court were all in good faith and that no circumstances exist to support relief under the 'fraud', 'misrepresentation', 'other misconduct', 'void judgment', 'no longer equitable', or 'any other justifiable reason' provisions of rule 60.

The defendant was properly served with a copy of the complaint. Nevertheless, this court could deduce that the defendant had notice of this suit when the defendant received copies of the default and then proceeded to make filings.

The affidavit filed by Thomas contains factual errors and material misrepresentations.

In paragraph 5, Thomas suggests that he initiated an investigation that was based on an affidavit filed in another private, civil action involving this same defendant, who was also the defendant in a state court personal injury suit. This full affidavit was actually filed in the state action by the defendant himself (see attached Exhibit 1). In the action, sub judice, the affidavit was redacted and included as an exhibit as part of the Affidavit of Peter Brandel, which was filed on July 16, 2007 as part of the plaintiff's Additional Support to Memorandum to Show Cause. The redacted affidavit properly supports and conforms to the averments in the plaintiff's complaint. The document bears the

4

endorsement of the defendant. Moreover, the notary public (Ms. Charlotte McNaull) that notarized the document previously filed a copy of her statement establishing that she witnessed the defendant's signature (see attached Exhibit 2). Nothing has been put before any court to suggest that Ms. McNaull did not follow state regulatory procedures in verifying the defendant's identity and that the document was appropriate for notarization.

Thomas failed to establish that the documents in this case that bears the defendant's signature are not the defendant's actual endorsements. The defendant is not a minor and was free to act in his own interests independently of anyone else in this case, and he did so. The defendant states in the full affidavit that he intended to revoke his statements concerning the plaintiff long ago, but was prevented from doing so due to pressure and threats made by the state of Ohio that he would be arrested, if he did so. No objection was raised in the state court concerning that affidavit and this is not the forum to raise objections against its content. Also, this federal court is not in the position to correct that underlying state case.

The defendant is presently on parole (see attached Exhibit 3). Since the judgment, the Ashland police and prosecuting personnel have put incredible pressure on the defendant with the threat of re-imprisonment if he did not cooperate with them in fraudulently presenting their accusations before this court. It should be noted that the same people actually threatened Mr. Brandel, who does not have a criminal record and is presently a federal witness in this case. These people served Mr. Brandel and his family with grand jury summons under the pretense that they were being investigated for criminal activity by testifying in this federal case in order to silence them. All of this is done with the explicit intent keep the false statements made by the defendant from being impugned. The police and the prosecutor in that city have threatened to re-imprison the defendant if he does not revoke the admission that he lied. They have made good on their threats by serving the defendant and Mr. Brandel and his family with grand jury summons.

All of the defendant's present statements and actions must be considered in light of the threats that Rogers and Thomas have made to him, and continued by the issuance of grand jury summons.

5

*Again, the plaintiff calls the court's attention to the fact that the defendant himself is not saying these things before this court.* Other people have come forward claiming that the defendant has said these things, contrary to the defendant's own filings, which would subject him to penalties of perjury and court sanctions. Thomas' affidavit attempts to bring the court's consideration of alleged statements by the defendant without the defendant filing his own objection, and thus, shielding the defendant from scrutiny and further sanctions.

Additionally, Thomas attempts to impugn Mr. Brandel, whom has filed the summons and an affidavit concerning the defendant's recent statements against the plaintiff. Both of these documents reflect Mr. Brandel's signature and Thomas would suggest that these written documents establish that Mr. Brandel has committed perjury and admits to committing perjury before this federal court. Thomas bases his illogical and erroneous conclusion on an alleged conversation. However, Mr. Brandel testifies clearly in the attached affidavit that the defendant was served with a copy of the complaint and summons on June 23, 2007, that defendant did make the recent actionable statements about the plaintiff, that the defendant did state that he lied to Mr. Brandel and to others when he made similar statements (see attached Exhibit 4).

## ***Conclusion***

The filing by the defendant through Ramona Rogers and Geoff Thomas does not raise grounds for relief under rule 60 B of the federal civil rules.

This court must take note that the defendant has not raised these allegations, but other people have raised them and attributed it to the defendant. The defendant has acted in his own interests before this court through his own filings and neither Rogers, Thomas, nor the state of Ohio can easily overturn his actions solely with an ex parte filing and without the defendant's own initiative.

Let the defendant himself, or the defendant's actual lawyer, comes before this federal court and make valid claims for consideration.

The plaintiff moves this court to strike the filing by Ramona Rogers and the affidavit of Geoff Thomas, and remove it from the record of this case, and reinstate the final judgment on August 8, 2007.

Respectfully Submitted


David Copeland-Jackson
Plaintiff

*Exhibit 1*

# In the Municipal Court of Mansfield, Ohio
## Small Claims Division

Peter Brandel,
     Plaintiff,

v.

                               Case Number: 2007 CVI 01462

Joseph P. Cutlip,
     Defendant.

## *Motion to Dismiss*

    Defendant moves this Court to dismiss this case, pursuant to the attached affidavit.

                             _Joseph P. Cutlip_____
                             Joseph P. Cutlip
                             Defendant

## Certificate of Service

I, Joseph Cutlip, do hereby certify that a true copy of this motion was personally delivered to the plaintiff on this _____ day of May, 2007.

                             _Joseph P. Cutlip_____
                             Joseph Cutlip
                             Defendant

*Exhibit 1*

# In the Municipal Court of Mansfield, Ohio
## Small Claims Division

Peter Brandel,
      Plaintiff,

v.                           Case Number: 2007 CVI 01462

Joseph P. Cutlip,
      Defendant.

### *Affidavit of Joseph P. Cutlip*

I, Joseph P. Cutlip, first, being duly sworn according to law and under the penalty of perjury, do hereby depose and assert that the following information is true and accurate.

1. My name is Joseph P. Cutlip and I live at 273 Lee Avenue, Ashland, Ohio 44805.

2. I have considered and fully understand the meaning of this statement; and, I have knowingly, intelligently, and voluntarily made this statement without reservations.

3. I intend this statement for all legal purposes to clarify (or otherwise take the place of) all other public and private communications made by, or ascribed to, me concerning these subjects.

4. I have never reported or suffered from, or otherwise have been diagnosed nor treated for, a psychological or mental condition, disorder, or disability of any kind as a minor or as an adult that has substantially impaired my functioning.

5. I have never experienced or suffered non-family physical or sexual victimization.

6. I am aware of Peter Brandel and his work with persons wrongly accused and convicted of crime. I did have an interview with Mr. Brandel and willing admitted each of the facts in this sworn statement or declaration.

7. I am aware of his work with/for David Copeland-Jackson. I was the complaining witness against Mr. Jackson in 2000. Joshua Helms and I were sexually involved and at the time, we did not want anyone to discover that we were actively, sexually involved.

*Exhibit 1*

8.  I had previously admitted to Mr. Jackson that my brother, Allen, had sexually abused me. Mr. Jackson told me that he was going to alert the pastor of my admission. I told my brother that Mr. Jackson was going to tell on us.

9.  My brother was aware that Joshua and I were sexually involved. Allen told us that we had to keep Mr. Jackson from telling and that if we didn't help him, then he was going to tell everybody that me and Joshua were sexually involved. Joshua and I were very afraid and did what Allen told us. I was fourteen years old and Joshua was thirteen years old at the time.

10. I went to tell the pastor that Mr. Jackson had abused me and Joshua- thinking that Mr. Jackson would not be allowed back at the church. Joshua Helms and I accused Mr. Jackson of performing sex acts on us. I did not intend for Mr. Jackson to get arrested.

11. Mr. Jackson did not have sexual contact of any kind with me- at any time, in any place. I did not observe Mr. Jackson having sexual contact of any kind with Joshua Helms- at any time, in any place.

12. The police and my parents and brother kept telling me what to say. After a while, the whole thing took on a life of its own. Every time I tried to correct the story, I was threatened that I would be arrested so I agreed with everybody and Mr. Jackson was arrested and was later sent to prison. Neither of Mr. Jackson's lawyers contacted me.

13. Over the years as I got older, I realized what I had done and wanted to tell the truth, but feared that I would be arrested for lying on Mr. Jackson. When I realized that Mr. Brandel was helping Mr. Jackson, I feared Mr. Brandel would discover the truth that Mr. Jackson never had any kind of sex with me and then I would get arrested.

14. I did not want nor intend to harm Mr. Brandel, but I had acted in anger and was blinded by fear when I took his property. My anger and fear regrettably and mistakenly lead me to believe that taking Mr. Brandel's property would stop his civil rights work on Mr. Jackson's behalf.

15. I am so sorry for all of this and wish that none of this had ever taken place. I agreed to repay Mr. Brandel for any loss or damages.

*Exhibit 1*

Further, Affiant sayeth nought.

*Joseph P. Cutlip*
Joseph P. Cutlip

5-8-07                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
Date                   Social Security

Sworn to and Subscribed in My Presence on this 8ᵗʰ day of *May 2007*, 2007.

*Charlotte M Naull*
Notary Public

**Charlotte S. McNaull**
**Notary Public, State of Ohio,**
**My Commission Expires 4/3/2012**

*Exhibit 2*

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

**Exhibit B**

2007 JUL 13  PM 5: 51

NANCY M.
MAYER-WHITTINGTON
CLERK

State of Ohio

ss.

County of Ashland

## Statement of Charlotte S. McNaull

Pursuant to section 1746 of title 28 of the United States Code, I declare (or certify, verify, or state) under penalty of perjury that the following is true and correct.

1. My name is Charlotte McNaull and I am a duly commissioned notary of the state of Ohio.

2. I have reviewed the attached exhibit, Affidavit of Joseph P.Cutlip.

3. Mr. Cutlip did appear before me on May 8, 2007 with satisfactory proof to establish his identity and did endorse the jurat and sign the document in my presence. I did ask Mr. Cutlip if he was signing under his own free-will ~~and without duress. I explained that duress meant whether~~ anyone was forcing him to sign or not. Mr. Cutlip stated to me that he was signing under his own free-will ~~and without duress.~~ *CU*

4. The document does reflect my official signature and bears my official notarial seal.

Executed on ___18th___ day of June, 2007.

*Charlotte S. McNaull*

Charlotte S. McNaull

Address:

___1577 CR 1575___

___Ashland, OH 44805___

_____

Charlotte S. McNaull
Notary Public, State of Ohio
My Commission Expires 4/2/2012

*Exhibit 3*

<u>**<< Search Page**</u>                                        Your search only returned one record.

### Ohio Department of Rehabilitation and Correction

## Offender Detail Information

### JOSEPH P CUTLIP

| | |
|---|---|
| <u>**Number:**</u> | A482980 |
| **DOB:** | 05/30/1985 |
| **Gender:** | Male |
| **Race:** | White |
| <u>**Admission Date:**</u> | 04/14/2005 |
| <u>**Institution:**</u> | Richland Correctional Institution |
| <u>**Status:**</u> | APA SUPERVISION |
| <u>**Zip Code:**</u> | 44805 |
| <u>**Residential County:**</u> | ASHLAND |



---

### Notice Information

No Notices for Offender.

---

<u>Ohio Revised Code</u>    <u>Felony Sentencing Chart</u>                  <u>Victim Info</u>

### Offense Information

**BURGLARY**                           **Counts:** 1           ORC: 2911.12 4
  Committing County: ASHLAND  **Admission Date:** 04/14/2005   **Degree of**      | Victim Info |
                                                            **Felony:** Third

**ATTEMPTED THEFT**                    **Counts:** 1           ORC: 2913.02 4
  Committing County: ASHLAND  **Admission Date:** 04/14/2005   **Degree of**      | Victim Info |
                                                            **Felony:** Fourth

---

### Sentence Information

| | | | |
|---|---|---|---|
| <u>**Stated Prison Term:**</u> | 2 years | **Actual Release Date:** | 07/05/2006 |
| <u>**Definite Sentence:**</u> | ---- | | |
| <u>**Indefinite Sentence Min:**</u> | ---- | **FOA/TRC Date:** | 07/05/2006 |
| <u>**Indefinite Sentence Max:**</u> | ---- | **POA Date:** | |
| <u>**Mandatory Sentence:**</u> | ---- | | |
| <u>**MDO:**</u> | ---- | **Supervision Start Date:** | 11/20/2006 |
| <u>**RVO:**</u> | ---- | **Period of Supervision:** | 3 years |
| <u>**Gun Specification:**</u> | ---- | **APA Office:** | MANSFIELD 3 |

*Exhibit 4*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

David Copeland-Jackson,

       Plaintiff,

v.                       Case Number: 1:07-cv-01124 ESH

Joseph P. Cutlip,

       Defendant.

## *Affidavit of Peter Brandel Regarding the Summons and the Parties*

I, Peter Brandel, do hereby state the following true information under oath pursuant to the penalty of perjury.

1.  On June 23, 2007, the plaintiff faxed the complaint and summons in this case to me. I went with my wife and served the defendant with the complaint and summons at his residence at 273 Lee Avenue, Ashland, Ohio 44805 on June 23, 2007. We drove up to the house and I got out and knocked on the door. His mother answered the door and said that the defendant would come out to talk to me because he was not dressed. We waited until the defendant got dressed and came out to the truck to my wife, and me and the defendant was not wearing shoes and was wearing blue jeans and a t-shirt. I then handed the defendant the complaint and summons in an envelope. The defendant took the envelope and said to me that he would look at it later. We did not talk about the complaint or summons.

2.  Any current questions regarding the service of the complaint have arisen due to the way I was questioned about the whole ordeal, and are in no way attributed to any misconduct on my behalf or that of the plaintiff. The questions were vague and ambiguous.

3.  I know the parties in this action. On April 27, 2007, I filed a complaint in the Mansfield Municipal Court stating that Joseph Paul Cutlip committed trespass and burglary on my property and removed items from my property. I believe the defendant stole from me in the fall of 2004 during the night when I heard a disturbance in my yard. But, due to my age I was not quick enough to catch the defendant. At first, I thought the disturbance was caused by a bunch of young people who were harassing me. I did notice things missing and assumed that other things were misplaced. In the winter of 2004 and spring of 2005 I began to notice other items that

*Exhibit 4*

were missing. During this period, the defendant was in jail for burglary and grand theft in Ashland in case 04-CRI-099.

4.  I did not really notice or discover that my things were stolen until I needed to use them and they were not on the property. In 2006, I took an inventory and searched my property for everything that I knew I had but was missing. It was then I discovered that many things were stolen. The defendant was released from prison sometime in 2006. I have attached the information regarding the defendant that is posted on the Ohio Department of Rehabilitation and Correction offender website. I don't remember the exact date, but I know in April 2007 I observed the defendant driving a small blue car around my property. When I discovered that true identity of the defendant, I then sued him as indicated to recover the property that he stole.

5.  In May of 2007 I went to the defendant's house in order to talk to him about the lawsuit. I did talk to the defendant and the defendant then mentioned other names of people that helped him steal from me. In the process of our discussions, I asked the defendant why he chose to steal from me and the defendant asked me if I knew the plaintiff. I told the defendant that I knew the plaintiff and that I had recruited the plaintiff to work for the Conklin Company. As the discussion progressed, I recall mentioning to the defendant that I had done some civil rights work for the plaintiff. I recall speaking highly of the plaintiff.

6.  In response of my praise of the plaintiff, the defendant told me that the plaintiff had sexual contact with the defendant and Joshua Helms. The defendant also said other nasty things to me about the plaintiff.

7.  Until that point, I had not connected the plaintiff and defendant. The last time I had talked to the plaintiff about his cases was in the spring of 2005 which was the time of the plaintiff's last court filing. I had not done any civil rights work in the plaintiff's cases since the spring of 2005. Since then, the plaintiff and I rarely ever communicated about the plaintiff's cases.

8.  The case record does not have the names of the plaintiff's accusers, and not a single filing in the case contains what the accusers have said. All of the filings put forth what the state officials claimed what happened. I then challenged the defendant on the inconsistencies in the plaintiff's case that I detected during my inquiries. I told the defendant that the plaintiff had passed two polygraphs and asked if the defendant had ever passed one on this issue, and the defendant told me no. At some point, the defendant became emotional and told me that he had lied to me when he told me that the plaintiff had sexual contact with the defendant and Joshua Helms.

*Exhibit 4*

9. The defendant also told me that he had lied in the past when he told other people that the plaintiff had sex with the defendant and Helms. The defendant then told me the circumstances that lead to the defendant making the allegations about the plaintiff. The defendant then agreed to make out full sworn statements, and file in the Mansfield Municipal Court. In that filed statement, the defendant acknowledged stealing my property; stated that he did it because of my civil rights work on the plaintiff's behalf; expressed remorse; and, agreed to repay me for the property he stole. Based on his remorse and agreement to repay me, we decided to dismiss the suit between us. The defendant and I went to the notary public and then we went together to the municipal court to file the dismissal with the defendant's affidavit attached. The court accepted the motion to dismiss with the defendant's affidavit attached, and the case was dismissed.

10. At no time did the defendant express reservations about the filed affidavit that he signed nor did the defendant file a single objection in the municipal court. In fact, the defendant stated that he was on parole and wanted to change his life, and did not want any new court actions. I recall the defendant telling me that he wanted to keep his statements private because he was on parole and did not want to be sent back to jail for what he did to me or what he did to the plaintiff.

11. The defendant clearly told me and wrote in his municipal affidavit that his brother, his parents, and the police pressured him. The defendant stated that he wanted to correct the lie, but was threatened with arrest if he changed his statements about the plaintiff.

12. I now believe that the Ashland law enforcement are once again pressuring the defendant to distance himself from his filed affidavit, which the defendant endorsed under oath under the penalty of perjury, and is presently uncontested in that case. I believe this due to my recent experience with Ashland law enforcement. Ashland law enforcement have served me and my wife with grand jury subpoenas in that county as part of their plan to frustrate any attempt to reveal that the defendant lied on the plaintiff.

13. The defendant stole my property. I sued him for trespassing and stealing. The defendant has a criminal history of thievery. I asked him why he did it and he conveyed that he did it in part to retaliate because of my civil rights work of the plaintiff's behalf. The defendant also told me that the plaintiff had sex with him and Helms. When faced with his inconsistencies, the defendant acknowledged that he lied to me, and that he lied to others, when he stated that the plaintiff had sex with him and Helms. The defendant made sworn statements that he lied to me and to others regarding the plaintiff, that he stole from me, and that he would repay me. The defendant's statements were filed in municipal court and are

*Exhibit 4*

uncontested in that court. Based on his statements, the defendant and I agreed to dismiss that suit. The defendant definitely led me to believe that he was under overwhelming pressure to accuse the plaintiff.

14. I relied on the defendant's sworn statements to my detriment and dismissed the small claims case against him due to his sworn representations. The defendant has now potentially created a cause of action where I will hold him accountable for what he told me and for his sworn statements in the municipal court affidavit.

15. I did speak to the defendant about also coming to work for the Conklin Company. I started to feel good about the defendant because he seemed to be genuinely glad that he told me what he had done to the plaintiff. This is why I actually offered a business opportunity to him.

16. The plaintiff did not participate in any way in the proceedings with the defendant and me. The plaintiff did not create or solicit the situation between the defendant and me. The plaintiff was unaware of the lawsuit, the defendant's statements to me about the plaintiff, and the existence of the defendant's sworn statements until I told the plaintiff and I forwarded them to the plaintiff on May 8, 2007.

17. I was taking a paralegal course sometime between 2001 and 2002 at the North Central State College in Mansfield, Ohio and the instructor was Ms. Judith Sturgill. At some point in the course, Ms. Sturgill brought in a copy of a handwritten legal brief that was filed by Mr. Jackson in one of his past legal cases in Ashland. Ms. Sturgill told the class that the writer had been convicted, but that she was uncertain as to whether the writer had actually committed the crime alleged. The class had mixed feelings on whether or not Mr. Jackson actually did it. Ms. Sturgill told the class that just because a person has been convicted did not mean that they did it. Ms. Sturgill wanted the students to use Mr. Jackson's handwritten brief as a model for legal writing.

18. I went to school to learn to be a legal assistant because at the time I wanted to go into civil rights work. After I read Mr. Jackson's brief, I noted the arguments he raised and some of the issues he had with the legal system in the region. I did vaguely recall the whole issue when it was in the media. I'm currently 69 years old and I have lived in this area for well over half my life and I'm convinced the racial climate played a major part. The accusers are white and Mr. Jackson is Black. I decided to look deeper into Mr. Jackson's case, which took a lot of time, and I came to deduce that Mr. Jackson had not committed the alleged offenses. So, I contacted Mr. Jackson, who was released a month or so after that. I did manage to visit him shortly after I contacted him within a few weeks of his release.

*Exhibit 4*

19. After Mr. Jackson's release, he and I became friends. Mr. Jackson became my consultant in other prisoner cases as well as other civil cases that I was involved in.

20. I believe that Mr. Jackson will be limited in life and remain damaged by the defendant's continuous broadcasting of statements that Mr. Jackson committed sexual acts with the defendant and Joshua Helms.

21. People from the Ashland police and prosecutor's office (from here on, I will refer to them as "the Ashland people") visited me on August 6, 9 and 10. I was questioned about the parties for about 45 minutes to an hour on August 6; about 15 minutes on August 9; and about 10 minutes on August 10. This present affidavit serves to explain and clarify my statements made on these days and supercedes any other communications on these matters.

22. On August 6, I was asked about the defendant's theft of my tools. I was asked why I did not call the police or report it to the insurance company. I understood that my options were to call the police to initiate criminal proceedings, report the incident to the insurance company for re-imbursement, or use civil remedies. I chose to use the civil courts to hold the defendant accountable after I discovered the defendant's true identity and that he was the culprit of the events stated above in paragraph two. This incident occurred in Mansfield, out of the jurisdiction of the Ashland people.

23. I was asked about my relationship with Mr. Jackson, and I have nothing substantial to add to paragraphs 16, 17, 18 and 19 above.

24. I was asked if I knew anything about "the second lawsuit." I did state that I was not aware of a second lawsuit. The problem is that I was talking to the police and so I said I did not know about any other suit because the tenor of the whole meeting seemed to be about exploring criminal proceedings involving Mr. Jackson, or the defendant. I conveyed that I did not know about any other criminal suits involving Mr. Jackson or the defendant. I chose to use civil proceedings to hold the defendant accountable for his stealing of my tools and I thought they were asking if I knew of other *criminal* proceedings with the defendant, or other *criminal* actions against Mr. Jackson.

25. The Ashland people never directly and clearly asked me about the present lawsuit between the parties. Surely, I am aware of this action when I served the defendant with the complaint and summons as stated in paragraph 1 above, and I prepared and gave Mr. Jackson the two affidavits that covered my dealings with the defendant. I did not state (or intend to convey) that I did not know of the present action between the

*Exhibit 4*

parties because such a statement would contradict the evidence, and subject me to the penalties of perjury before this federal court when the summons and two affidavits sworn under the penalty of perjury reflect my signature, which would also establish my actual knowledge of this civil action.

26. On August 9, I was told by the Ashland people that David Copeland could get into trouble with his civil suit against the defendant and that he [David Copeland] could drag me into it and I could get into criminal trouble if I covered for him [David Copeland]. I felt that I was being threatened, manipulated, coerced, and intimidated by the Ashland people. I know what happened between the defendant and me, which was a private civil matter that was settled and closed. I understand that the defendant's statements to me about Mr. Jackson on May 8, 2007 are actionable and that Mr. Jackson is holding the defendant accountable for that in this civil action. I truly do not understand why there is a problem. My case and this case are civil cases, between civil parties and do not include the Ashland police and the Ashland prosecuting authorities.

27. Interestingly, the Ashland people never told me that the defendant was now denying stealing my tools and his agreement to repay me. Nor did they say to me that the defendant was now denying the fact that he told me that Mr. Jackson had sexual contact with the defendant and Joshua Helms, and that he told me that he lied when he told me that Mr. Jackson had sex with the defendant and Joshua Helms.

28. On August 10, one of the Ashland people showed me my signature on the summons of this civil suit and I clearly stated that the signature appeared to be mine and that I served the summons on the defendant. Both, my wife and me were then served with grand jury subpoenas for Ashland County.

29. I have reviewed the affidavit submitted to this court by Geoff Thomas. In paragraph 4, Thomas states that the defendant was one of Mr. Jackson's accusers, but the criminal case file does not include statements made by the accusers, nor does it include the names of the accusers. I did not make any connection between the parties as I said in paragraphs 6 and 7 above, until the defendant made the statements about Mr. Jackson.

30. In paragraphs 5 and 6, Thomas claims that he secured a copy of the filed municipal affidavit, and that the defendant denies recanting allegations of sexual assault against the plaintiff. I attached a redacted copy of the municipal affidavit to my affidavit filed by Mr. Jackson on July 16, 2007. That affidavit as it appears in this court only states that Mr. Jackson did not have sexual contact with the defendant and Joshua Helms. Despite

Thomas' statement, the defendant did state to me on May 8, 2007 that he did not have sexual contact with Mr. Jackson (see paragraph 8, above).

31. In paragraphs 8-13, Thomas states that the defendant denies receiving the complaint, and Thomas attempts to create a foundation to suggest that the plaintiff and I somehow misbehaved. I have explained that the defendant did receive the complaint and summons in paragraph 1, above. I have explained in paragraphs 23 and 24, above, that the Ashland people did not directly ask me about the present suit and that any references about legal actions involving the parties was asked within the context of discussing criminal proceedings. I understood the question to be referring to criminal actions- to which I responded that I did not know of any other actions. Thomas is correct when he states that I have not talked to the defendant about any other actions. I have explained my relationship with Mr. Jackson in paragraphs 7 & 16-20, above.

32. The tenor of Thomas' affidavit seems to try to establish the idea that since Mr. Jackson and I are friends that I, or that we would, scheme and lie on the defendant and even commit perjury and fraud on this federal court. Thomas' attempt here is scandalous and misplaced, but yet consistent with how things are done in this region. Law enforcement in this region often make material omissions and discuss an issue in real time under one context, but somehow later represent it under a different context as done here. I have clearly explained things as I have understood them then and state that no disparity exists now that I've had the opportunity to explain and further clarify myself.

33. I'm 69 and I have lived in this area well over half my life. The defendant is a criminal convict. He is a thief and a liar. He made the statements to me about the plaintiff, and then stated to me that he lied to me about the statements regarding the plaintiff. These acts alone are actionable. Moreover, the defendant went on and told me that he made previous statements about the plaintiff and that those statements were lies. He agreed to and did sign the sworn statements. The defendant did receive the complaint and summons.

34. I must call attention to one other point. Neither the defendant nor Joshua Helms ever publicly stated that the plaintiff had sex with them, and the court records don't indicate statements made by them. The case records only contain statements made by the Ashland people saying that the defendant and Joshua Helms alleged that they had sexual contact with the plaintiff. In the affidavit presented by Geoff Thomas, the same trend continues. Again, the Ashland people are supposedly representing what the defendant did or did not say. Prosecutors and police also lie- and it is entirely possible that the Ashland people are lying and are misrepresenting the defendant's statements and intent.

*Exhibit 4*

35. When no threats of re-imprisonment existed and the defendant thought his statements would remain private, the defendant candidly acknowledged his lies. He stated that it was the pressure from the police and the threat of imprisonment for lying that kept him from coming clean. Now that the Ashland people are out harassing, intimidating, manipulating, coercing, and threatening the defendant as they did with me, the defendant has allegedly retreated back into broadcasting the lie that the plaintiff had sex with the defendant and Joshua Helms. But, no matter what, the Ashland people will not be able to erase the defendant's actions and statements to me on May 8, 2007, and I continue to endorse my June 18 and June 26 affidavits on this.

Peter Brandel

Sworn to and Subscribed in My Presence on this 16 day of August, 2007.

Notary Public

<u>&lt;&lt; Search Page</u>                                    Your search only returned one record.

### Ohio Department of Rehabilitation and Correction

## Offender Detail Information

### JOSEPH P CUTLIP

| | | |
|---|---|---|
| <u>Number:</u> | A482980 | |
| <u>DOB:</u> | 05/30/1985 | |
| <u>Gender:</u> | Male | |
| <u>Race:</u> | White | |
| <u>Admission Date:</u> | 04/14/2005 | |
| <u>Institution:</u> | Richland Correctional Institution | |
| <u>Status:</u> | APA SUPERVISION | |
| <u>Zip Code:</u> | 44805 | |
| <u>Residential County:</u> | ASHLAND | |



---

### Notice Information

No Notices for Offender.

---

<u>Ohio Revised Code</u>      <u>Felony Sentencing Chart</u>                <u>Victim Info</u>

### Offense Information

**BURGLARY**                        **Counts:** 1      ORC: 2911.12 4

  Committing County: ASHLAND  Admission Date: 04/14/2005   **Degree of Felony:** Third    <u>Victim Info</u>

**ATTEMPTED THEFT**                  **Counts:** 1      ORC: 2913.02 4

  Committing County: ASHLAND  Admission Date: 04/14/2005   **Degree of Felony:** Fourth   <u>Victim Info</u>

---

### Sentence Information

| | | | |
|---|---|---|---|
| <u>Stated Prison Term:</u> | 2 years | **Actual Release Date:** | 07/05/2006 |
| <u>Definite Sentence:</u> | ---- | | |
| <u>Indefinite Sentence Min:</u> | ---- | <u>FOA/TRC Date:</u> | 07/05/2006 |
| <u>Indefinite Sentence Max:</u> | ---- | <u>POA Date:</u> | |
| <u>Mandatory Sentence:</u> | ---- | | |
| <u>MDO:</u> | ---- | **Supervision Start Date:** | 11/20/2006 |
| <u>RVO:</u> | ---- | **Period of Supervision:** | 3 years |
| <u>Gun Specification:</u> | ---- | **APA Office:** | MANSFIELD 3 |