**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2007 AUG 24 PM 4: 22

NANCY M.
MAYER-WHITTINGTON
CLERK

David Copeland-Jackson,

        Plaintiff,

v.                                   Case Number: 1:07-cv-01124 ESH

Joseph P. Cutlip,

        Defendant.

### _Motion to Strike and for Consideration, and Post-Hearing Memorandum_

      Plaintiff respectfully objects to the court's consideration of the defendant's letter filed on August 13, 2007 and entered on the public record on August 17, 2007. Plaintiff moves this court to strike the ex parte filing from the record of this case. Plaintiff moves for consideration of Motion to Strike and Response to the Order to Vacate Judgment filed before the hearing on August 16, 2007. A memorandum is attached.

Respectfully Submitted

David Copeland-Jackson
Plaintiff

Certificate of Service

I hereby certify that a true copy of this response was sent by ordinary mail with postage prepaid to Joseph Cutlip at 273 Lee Avenue, Ashland, Ohio 44805 on this 20 day of August, 2007.

David Copeland-Jackson
Plaintiff

1

### *Memorandum in Support*

Plaintiff incorporates by this reference his arguments raised in his previous motion to strike and response to the order to vacate judgment filed on August 16, as if they were written verbatim herein.

### *The defendant may not make ex parte communications...*

Plaintiff contends that the defendant did not serve a copy of his letter on the plaintiff contrary to, and a certificate of service was not filed to indicate that service was properly effectuated consistent with, Rule 5 of the Federal Rules of Civil Procedure.

Moreover, Rule 5.1 of the local rules for the United States District Court for the District of Columbia clearly establishes that correspondence shall not be directed to the judge. The defendant's letter constitutes an improper ex parte communication.

This ex parte filing was not put on the public record on August 13, 2007 and the plaintiff was unaware of the defendant's ex parte communication until it appeared on the public on August 17, 2007. Plaintiff was not aware that the court was in possession of this ex parte document until after the August 16 hearing. Had the plaintiff been aware, the plaintiff would have moved to strike and introduced appropriate evidence to refute the ex parte filing.

The plaintiff has raised an objection in his Motion to Strike and Response to the Order to Vacate Judgment filed on August 16, 2007. Neither the defendant nor any other person is permitted to have ex parte communications with the court. The court should not consider such communications and should strike them from the record of this case. Let the defendant present them in proper form and according to the correct procedure. He clearly knows how.

### *The defendant's ex parte letter is meritless, misrepresents the facts, and is improper...*

In the ex parte communication, the defendant requested a continuance. The court did not grant a continuance, and held the hearing regarding the service of the complaint

and summons on August 16, 2007 pursuant to the order of the court that was entered on August 9, 2007.

Other than the summons and complaint (which the plaintiff addresses, infra.), the defendant does not state that he did not receive the other court paperwork, but only states that he does not have copies. It is uncontested that the clerk in fact mailed the court's orders on July 9, July 26 (default entry), July 31, and August 8 directly to the defendant. In addition to his own filings, the defendant communicated with the court ex parte on August 9 and 13.

The defendant also attempts to put information before the court that this court cannot consider. While the defendant puts the plaintiff's criminal record before the court, he failed to put his own criminal record before the court (see attachments), including his weapons charge. The defendant was convicted in the same county on third degree felonies, served prison time under inmate #A482-980, and is also presently on parole.

Neither of the parties' records are relevant to the case, sub judice. Plaintiff's complaint avers actionable conduct by the defendant against the plaintiff in May of 2007, wherein he acknowledged he did make bad comments about the plaintiff to Mr. Brandel and acted in conspiracy with another person in broadcasting the comments. When and to whom the defendant made his comments are questions of fact, and if he made statements to Mr. Brandel, then the plaintiff may bring this action.

The defendant's sworn statements are before this court. Whether or not the defendant made those statements are questions of fact that cannot simply be impugned by the defendant's self-serving, ex parte communication. The defendant's remedy is to seek rule 60 post-judgment relief. If there are questions as to the production of the statements, they must be made formally. The record clearly shows that the defendant knows how to communicate with this court. Any consideration of this ex parte material apart from rule 60 relief is improper.

### *The defendant attempts to change the nature of the plaintiff's claims...*

This court is not sitting in habeas or post-conviction relief proceedings to consider either of the parties' criminal cases.

3

This court should take notice that the defendant has not clearly stated what comments he allegedly made in relation to the criminal proceedings. The defendant also does not state that he merely repeated to Mr. Brandel and others what he allegedly stated in relation to the criminal proceedings. This present, apparent ambiguity is intentional. The plaintiff, however, contends that the defendant's statements to Mr. Brandel on May 8 were not repetition of allegations made in relation to the criminal proceedings.

The defendant <u>intentionally</u> misrepresents the plaintiff's case before this court in order to invite internal bias and public scorn so as to change the nature of the plaintiff's claims. The plaintiff contends that this court's posture would seem to indicate that the court accepts the ex parte filings, and that the plaintiff's claims should not be received as he has presented them in his filings and supporting documents and evidence.

The defendant committed other acts apart from, since, and beyond any acts that may have been part of the criminal proceedings. The plaintiff may indeed litigate those actions. The plaintiff's complaint is based on the defendant's conduct in 2007. The plaintiff has a good faith basis to litigate the defendant's conduct in this court at this time based on Mr. Brandel's testimony, and the defendant's own sworn statements made on May 8, 2007. As long as neither of the parties' criminal cases were before this court, this court could reach the merits based on the evidence put before the court.

In an attempt to frustrate the court's decisions, the defendant falsely claims that he has not been initially served and that he did not make the statements attributed to him. These are issues of fact that must be established by the defendant with evidence. Instead, he tries to cloud the true issue by improperly raising (and misrepresenting) the plaintiff's record, while forgetting to raise his own. References to the parties' records are insufficient to vacate a final judgment that is not amenable to relief pursuant to the grounds established under rule 60.

Apparently, the ex parte communications attempts to request relief on "fraud" or "misconduct" grounds simply based on mere references to criminal records. Plaintiff makes this contention based on the court's statement to the plaintiff in the August 16 hearing that the court has cause to believe that the plaintiff and Mr. Brandel are trying to run a sham on the court. The defendant did not invoke rule 11 or rule 60. The court said that such suspicion was raised by the ex parte communications, post-judgment. The

plaintiff does not challenge the court's inherent authority to inquire as to the regularity of the proceedings before it, but those post-judgment ex parte communications are not sufficient to warrant rule 11 or 60 relief, and merely only raises allegations without putting any evidence before the court. Allegations alone are not evidence of fraud or misconduct. Further, neither the defendant, Rogers, nor Thomas appeared before the court at the hearing to support their allegations, and now are most certainly precluded from raising such arguments.

The plaintiff's criminal case resulted from constitutional error (see attached Affidavit of Wayne Miller). The defendant himself has misrepresented his age and the number of accusers before this court (see the attached statement establishing the defendant's birthdate). Both the Ohio and D.C. parole supervision authorities administered polygraphs to the plaintiff regarding the criminal charges, which he passed (see the attached polygraph reports). Notwithstanding any of these issues, this court cannot consider these arguments or those raised by the defendant relating to the criminal cases.

### *The defendant admits to meeting with Mr. Brandel on June 23, 2007...*

The defendant states that he did not receive the summons and the complaint in his ex parte communication. Yet, the defendant states that he and Mr. Brandel did meet on June 23, 2007. The defendant claims that Mr. Brandel sent him an apology letter, but failed to produce the alleged letter.

Plaintiff spoke to Mr. Brandel on June 26 and June 29. Mr. Brandel returned the summons to the plaintiff by mail. The plaintiff asked Mr. Brandel about service and he told the plaintiff that he had served the defendant at the defendant's house on the previous Saturday, which would have been June 23, 2007. Mr. Brandel signed the summons the day he returned it, but did not fill in the date he served it, the name of the server, or the defendant's address. After checking with Mr. Brandel, the plaintiff did fill in the date that Mr. Brandel served the summons (June 23, 2003), the name of the server, the defendant's address, and the plaintiff corrected Mr. Brandel's address. Mr. Brandel highlighted these corrections when the Plaintiff presented a copy of the summons to Mr. Brandel at the hearing.

Plaintiff filed a motion before the court hearing on August 16. Mr. Brandel's affidavit regarding the summons was attached to the motion. In the affidavit, Mr. Brandel explained the circumstances surrounding the service of the summons and complaint. Mr. Brandel clearly states that he served the defendant with the complaint and summons. He also testified at the hearing under oath that he did serve the defendant with the summons and the complaint.

No evidence has been presented by the defendant to refute the fact that he was served with the complaint and summons on June 23, 2007 as stated by Mr. Brandel in his affidavit and in his oral testimony. The defendant, who is a felon, cannot easily impeach Mr. Brandel's integrity when Mr. Brandel does not have a criminal background, and has not conducted himself improperly.

### *The defendant admits to signing three separate statements before a notary...*

The defendant states that he "signed three papers before a notary." He now claims that Mr. Brandel somehow baited-and-switched on him. Read in context, the defendant does not state that he did not make or intend to make the sworn statements. The statements were presented before and accepted by the state court and the defendant did not raise any objections in that court, and cannot challenge them here. Both, he and Mr. Brandel offered the same statements in their state court action (see attachments).

Ms. Charlotte McNaull was the notary public that notarized the defendant's documents. She submits her attached statement to this court. The defendant clearly fails to offer any evidence to refute the presumption of regularity of proceedings before Ms. McNaull, who is duly commissioned by the state to administer oaths. The defendant appeared before the notary, stated that he was signing under his own free-will and that no one was forcing him to sign, and did sign the document in Ms. McNaull's presence.

The plaintiff contends that the defendant cannot now be heard in this court to refute his statements and signature solely based on his own unsworn, self-serving, ex parte communication. The defendant now plainly tells the court that he signed the documents, but that he was apparently unaware of the contents of the documents. Yet, the defendant himself filed a copy of his statements and did not object to its form or content.

The plaintiff has presented uncontested, expert evidence before this court pursuant to 28 U.S.C. § 1731 to establish that the defendant did endorse the statements attributed to him in this court.

## *The defendant cannot invoke bad faith sanctions...*

The court can enter a finding of bad faith if the plaintiff raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. The defendant states to the court in his ex parte communication that the plaintiff is harassing him through Mr. Brandel. The defendant couples the harassment allegation with an implicit assertion that his sworn statements contained erroneous or false information.

In ***Ramirez-Alejandre v. Ashcroft*** 320 F.3d 858, the ninth circuit court of appeals stated that inconsistent statements and false assertions made in affidavits and sworn statements alone do not indicate bad faith. There must be evidence that the alleged false statements were made with a harassing or frivolous purpose.

Again, the defendant presented no evidence before the court to establish that false statements have been put before the court and the plaintiff has harassed the defendant. The court did not make a finding of bad faith toward the plaintiff or Mr. Brandel.

## *The defendant has a compelling motive to misrepresent himself before this court...*

The defendant has admitted that he made false statements against the plaintiff, that he intentionally made the statements, that he acted in conspiracy with others, and that he was prevented by threats of imprisonment from correcting himself. This court must now assume that the defendant's statements are valid.

The defendant has clear motives to misrepresent the true facts and attempt to frustrate these federal proceedings.

The defendant is presently on parole and is attempting to undo the judgment against him, and prevent himself from being subjected to other potential legal penalties. The defendant is under pressure to stick to his false statements under the threat of re-imprisonment.

7

### *Conclusion*

The defendant may not communicate with this court via ex parte filings, and this court cannot consider such. Since the defendant clearly knows how to address the court, then his ex parte communications should be removed and the defendant should be directed to properly communicate with the court.

The defendant's ex parte communications were insufficient to impeach Mr. Brandel's affidavit and subsequent oral testimony that the defendant was served with the summons and complaint. Moreover, the ex parte communications alone were insufficient to establish that the plaintiff participated in misconduct or committed fraud before this court. This court had a hearing wherein the defendant chose not to attend, and the court did not grant a continuance. Other than the improper post-judgment ex parte communication, the defendant has presented no evidence to invoke rule 60 relief.

The defendant admits to meeting with Mr. Brandel on June 23, 2007. Mr. Brandel testified orally and in writing that he did serve the defendant with the summons and complaint on June 23, 2007. The ex parte filings did not impeach Mr. Brandel's integrity, credibility, and testimony.

The defendant is presently on parole and now under enormous pressure from the Ashland prosecutors and police to distance himself from his sworn statements. The defendant has raised these frivolous attacks post-judgment to avoid, and only because he was threatened with, re-imprisonment by the prosecutors and police.

The defendant made and intended to make the statements attributed to him and reflect his signature. Apart from his reasons for doing so, the defendant cannot simply impeach his own statements and actions solely with post-judgment ex parte communications, and without other evidence procedurally brought to this court pursuant to rule 60.

Wherefore, the plaintiff requests this court to strike the ex parte documents that were filed post-judgment, and re-instate the final judgment entered on August 8, 2007 without delay.

Respectfully Submitted

David Copeland-Jackson
Plaintiff

8

Let me
be filed
ESH
8/13/07

United States District Court
For the District of Columbia
Chambers of Ellen Segal Huvelle
333 Constitution Avenue, N.W.
Washington, D.C. 20001

Attn: Judge Ellen S. Huvelle

Case Name: COPELAND-JACKSON v. CUTLIP
Case Number: 1:07-cv-1124
Filer:
Document Number 17

I'm writing this letter in regards to the above mentioned case.  Please give me a
continuance because I need time to find an Attorney in Washington, D.C.  I never
received a summons for this case.  All I have is the papers notifying me of the court
date.

Would you please send me the paperwork on what Copeland-Jackson is sueing me
for.

For your personal information, please be inform that I was 13 years old when David
Copeland-Jackson molested me as well as two other victims, who were tutored by
Copeland-Jackson.  Copeland-Jackson was arrested, and convicted : Ashland Co
Case #00-CRI-07904 Gross Sexual Imposition (acts). The prosecutor in this case
was John Good, now in private practice. His phone number is (419)207-0553.
Copeland-Jackson pled to a lessor charge on a Bill of Information, He went to
prison for 3 years, under inmate #A389768.  He was released from prison on
05/30/2003 and is presently on supervision in Washington, D.C. to parole officer,
Jamie Bland.

Copeland-Jackson has been harassing me through his friend Peter Brandel a
paralegal who lives in Mansfield, Ohio.  Mr. Brandel filed burglary charges against
me.  Then sent me a letter on June 23, 2007 apologizing saying it was a mistake.
He took me to a bank in Ashland, and he and I signed 3 papers before a notary
saying that he filed the report in error.  Later on, I learned that one of the papers he
had me sign was a statement that Copeland-Jackson did not molest me.  At that time
I did not know Peter Brandel was Copeland-Jackson friend.  Copeland-Jackson is a

Registered Sex offender.

Thank you for your concern and please send paperwork to Joseph P. Cutlip 273 Lee Ave. Ashland, Ohio 44805.

Sincerely,

Joseph P. Cutlip

# D O C K E T   S H E E T

Aug 22, 2007                    Ashland Court, Ashland, Ohio                    Page    1

12:25 pm                              Annette Shaw

                                    Clerk of Courts

              D O C K E T   S H E E T    for 04-CRI-099

                  STATE OF OHIO  vs.  JOSEPH P CUTLIP

---

Date Filed: 11/23/04                    Style: STATE V CUTLIP

                          Judge      : 1


Action    : CRIMINAL CASE

ORC 1      2911.12A3                DESC 1      BURGLARY

ORC 2      2911.12(A)(3)            DESC 2      BURGLARY

ORC 3      2913.02(A)(1)            DESC 3      GRAND THEFT

DESC 1     DISMISSED 2/17/04

---

Judge      Deborah E. Woodward              Judge


Plaintiff 1                              Attorney

Pty    1    STATE OF OHIO              RAMONA FRANCESCONI ROGERS

                                        307 ORANGE ST

                                        ASHLAND OH 44805


Defendant 1                              Attorney

Pty    2    CUTLIP, JOSEPH P            SULLIVAN, MICHAEL

            273 LEE AVE                  10 E MAIN STREET

            ASHLAND        OH  44805     ASHLAND OH 44805

                ITN #      366931C

                ITN #      366931C

                ITN #      366931C

---

---

## Actions

Date  Description

---

11/23/04

COMPLAINT FILED.

11/23/04

NOTICE TO SERVE CRIMINAL COMPLAINT ISSUED ASHLAND COUNTY
SHERIFF FOR PERSONAL SERVICE.

11/24/04                          SERVICE

NOTICE TO SERVE COPY OF CRIMINAL COMPLAINT RETURNED AND
FILED. JOSEPH CUTLIP BY PERSONAL SERVICE 11-23-04.

11/24/04                          HEARING

THIS CASE HAS BEEN SCHEDULED FOR ORAL HEARING ON NOVEMBER
29, 2004 AT 8:30 AM.

11/24/04                          FIXING BND

JUDGMENT ENTRY FIXING BOND FILED:  DEFENDANT MAY BE
RELEASED UPON POSTING A PERSONAL RECOGNIZANCE BOND AND
BAIL BOND AS OUTLINED; RESTRICTIONS AS OUTLINED.

STARTING JM# 187  ENDING JM# 187

11/29/04                          ENTRY

WAIVER OF PRELIMINARY HEARING FILED.

STARTING JM#  31  ENDING JM#  31

11/29/04                          HEARING

THIS CASE HAS BEEN SCHEDULED FOR APPEARANCE ON DECEMBER
17, 2004 AT 1:30 PM.

11/30/04

STENOGRAPHER FEES FOR APPEARANCE ON 11-29-04.

12/06/04                          ENTRY

BOND SETTING AND INITIAL APPEARANCE WAS HELD NOV. 24, 2004.
THE DEFENDANT IS FOUND TO BE INDIGENT AND ATTY. MICHAEL
P. SULLIVAN IS APPOINTED COUNSEL.  APPEARANCE IS SET FOR
NOV. 29, 2004 8:30 P.M.  DEFENDANT MAY BE RELEASED UPON
POSTING A PERSONAL RECOGNIZANCE BOND AND A BAIL BOND AS
OUTLINED.  TERMS AND CONDITIONS AS OUTLINED.  CLERK'S PROOF
OF SERVICE.

STARTING JM# 20  ENDING JM# 21

12/10/04 ENTRY

INITIAL APPEARANCE HELD 12-29-04. DEFENDANT ENTERED A PLEA OF NOT GUILTY AND WAIVED HIS RIGHT TO PRELIMINARY HEARING WHICH THE COURT ACCEPTED. THIS MATTER IS BOUND OVER TO GRAND JURY. FURTHER APPEARANCE SCHEDULED FOR FRIDAY, DECEMBER 19, 2004 AT 1:30 PM. BOND CONTINUED.

STARTING JM#  5  ENDING JM#  5

12/15/04

INDICTMENT FILED AFTER COMPLAINT.

12/15/04 INSTRCTNS

PROSECUTING ATTORNEY'S REQUEST FOR ISSUANCE OF NOTICE OF SERVICE UPON INDICTMENT FILED.

12/16/04

NOTICE TO SERVE INDICTMENT ISSUED COURT SECURITY.

12/16/04 SERVICE

NOTICE TO SERVICE INDICTMENT RETURNED AND FILED.

12/17/04

STENOGRAPHER FEES ARRAIGNMENT 12-17-04.

12/17/04 HEARING

THIS CASE HAS BEEN SCHEDULED FOR JURY TRIAL ASSIGNMENT ON THURSDAY, FEBRUARY 17, 2005 AT 8:00 A.M.

12/30/04 MISC

REQUEST FOR DISCOVERY, PROOF OF SERVICE FILED BY ATTY SULLIVAN.

01/14/05 MISC

REQUEST FOR DISCOVERY, PROOF OF SERVICE FILED PROSECUTOR

01/14/05 MISC

DISCOVERY CERTIFICATION EXHIBITS A-D FILED PROSECUTOR.

01/18/05 MISC

DISCOVERY CERTIFICATION, EXHIBITS A-D RECEIVED BY ATTY SULLIVAN.

01/24/05 ENTRY

ARRAIGNMENT WAS HELD ON DECEMBER 17, 2004.  DEFENDANT ENTERED A PLEA OF NOT GUILTY.  JURY TRIAL IS SCHEDULED FOR FEBRUARY 17, 2005 AT 8:00 A.M. THE COURT DENIED THE DEFENDANT'S MOTION FOR MODIFICATION OF BOND AND IT IS

CONTINUED AS PREVIOUSLY SET.  CLERK'S PROOF OF SERVICE.

STARTING JM#  11  ENDING JM#  11

01/27/05                          MISC

PRECIPE FOR SUBPOENA FILED BY PROSECUTOR.

01/27/05

SUBPOENAS (4) ISSUED ASHLAND COUNTY SHERIFF FOR SERVICE.

01/31/05                          SERVICE

SUBPOENAS RETURNED AND FILED: SGT DON SIMS SERVED
01/28/05; KENNETH SMITH, JANET CUTLIP, MARY FREEMAN SERVED
01/29/05.

02/08/05                          HEARING

THIS CASE HAS BEEN SCHEDULED FOR PRETRIAL ON WEDNESDAY,
FEBRUARY 9, 2005 AT 11:00 AM.

02/09/05                          HEARING

THIS CASE HAS BEEN SCHEDULED FOR CHANGE OF PLEA ON
TUESDAY, FEBRUARY 15, 2005 AT 9:30 AM.

02/17/05                          WAIVER

WAIVER OF CONSTITUTIONAL RIGHTS AND PLEA OF GUILTY ENTERED
BY DEFENDANT.  CLERK'S PROOF OF SERVICE.

STARTING JM#  3  ENDING JM#  5

02/17/05                          CHANGE/PL

CHANGE OF PLEA HELD AS OUTLINED.

STARTING JM#  6  ENDING JM#  7

02/17/05                          HEARING

THIS CASE HAS BEEN SCHEDULED FOR SENTENCING ON MONDAY,
MARCH 21, 2005 AT 9:00 AM.

02/22/05                          MISC

DEFENDANT'S SENTENCING MEMORANDUM, PROOF OF SERVICE FILED
BY ATTY. SULLIVAN.

02/23/05

STENOGRAPHER FEES CHANGE OF PLEA 02/15/05.

03/30/05

STENOGRAPHER FEES SENTENCING ON MARCH 21, 2005.

04/04/05                          HEARING

THIS CASE HAS BEEN SCHEDULED FOR SENTENCING ON APRIL 7,
2005 AT 11:00 AM.

04/12/05                          SENTENCING

SENTENCING WAS HELD ON APRIL 7, 2005. DEFENDANT HAVING
BEEN FOUND GUILTY IS SENTENCED AS OUTLINED. COSTS TO
DEFENDANT. BOND RELEASED.

STARTING JM# 25  ENDING JM# 30

04/12/05                              WAR CONVEY

WARRANT TO CONVEY WITH CC OF SENTENCING AND INDICTMENT
ISSUED ASHLAND CO. SHERIFF.

04/14/05                              ENTRY

APPOINTED COUNSEL FEES AND EXPENSES APPROVED. CLERK'S
PROOF OF SERVICE.

STARTING JM#  42  ENDING JM#  42

04/14/05

STENOGRAPHER FEES FOR SENTENCING ON 4-7-05.

04/15/05                              SERVICE

WARRANT TO CONVEY RETURNED AND FILED.

04/15/05                              COSTS

COST BILL FILED.

04/19/05

NOTICE OF COMMITMENT AND CALCULATION OF SENTENCE FILED BY
OHIO DEPARTMENT OF REHABILITATION AND CORRECTION.

04/25/05                              FILM

*** FILM CUT AND IN JACKET *****

05/23/05                              MISC

COPIES FILED:  LETTER TO LORAIN CORRECTIONAL AND COST
CERTIFICATION.

05/23/05                              FILM

*** FILM CUT AND IN JACKET *****

01/27/06                              MISC

ADDRESS CHANGE FOR DEFENDANT FILED.

02/02/06                              FILM/JACKE

** FILM CUT AND IN JACKET **

12/27/06                              CJ

CERTIFICATE OF JUDGMENT FILED. (06-CJ-D25-P224)

12/27/06                              FILM/JACKE

** FILM CUT AND IN JACKET **

12/27/06                              FILM/JACKE

** FILM CUT AND IN JACKET **

03/29/07                          MISC

    ADDRESS CHANGE RECEIVED FROM DEFENDANT.

03/29/07                          FILM/JACKE

    ** FILM CUT AND IN JACKET **

Click the Back Button to Return to Previous Screen

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

FILED

2004 JAN -9 PM 1:2

NORTHERN DISTRICT OF OH
CLEVELAND

David Copeland-Jackson,

        Petitioner,

vs.

Kenneth L. Starbuck,

        and

State of Ohio,
        Respondents.

Case No: 1:03-cv-01986

Honorable Patricia A. Gaughan
Judge

Honorable David S. Perelman
Magistrate

STATE OF OHIO
FRANKLIN COUNTY  ss

## AFFIDAVIT OF WAYNE D. MILLER, ATTORNEY AT LAW

Now comes Wayne D. Miller after being duly cautioned and sworn according to law and says and deposes as follows:

1. That I am an attorney currently licensed to practice law in the State of Ohio, registration number 0058543 with offices located at 7536 Reliance St., Worthington, Ohio 43085. I have been so licensed since 1992. I am experienced in handling various criminal matters and cases. While I practice primarily in Franklin County, I have practiced in various other courts around the State of Ohio.

2. I was retained by Mr. David Copeland-Jackson to give my professional legal opinion concerning the legal representation of Mr. Joseph P. Kearns, Jr., and Mason, Mason & Kearns in criminal case 00-CRI-07904 before the Ashland County Court of Common Pleas, and the legal representation of Mr. Charles D. Lynch in criminal appeal case 00-COA-01378, before the Fifth District Court of Appeals for Ashland County.

3. In preparation and to support my opinion, I reviewed Mr. Copeland-Jackson's statements, the indictment, the Bill of Information, the trial court transcripts, various filings by Mr. Kearns, the plea agreement, the related journal and judgment entries, various filings by Mr. Lynch and various correspondence between Mr. Copeland-Jackson and Mr. Lynch. Mr. Copeland-Jackson's statement of facts which he furnished to me regarding his case, and attached hereto as Exhibit A, was presumed to be accurate for purposes of this Affidavit.

4.  It is my professional opinion that the representation of Mr. Joseph Kearns, Jr. and Mason, Mason & Kearns, and Mr. Charles D. Lynch, on behalf of Mr. Copeland-Jackson in the trial court and court of appeals were constitutionally ineffective, did not constitute litigation strategy, and fell below the professional standards of criminal defense and appellate advocacy for Ohio lawyers. Their representations constituted negligence and legal malpractice. As a result of their negligence, Mr. Copeland-Jackson was convicted and sentenced, and made to serve 2 terms of imprisonment, in addition to other sanctions and circumstances.

5.  Mr. Kearns, and Mr. Lynch had the same duties as would all Ohio lawyers, to provide Mr. Copeland-Jackson with competent counseling; to handle Mr. Copeland-Jackson's legal matters with proper preparation, which includes complete investigation and discovery; to know, research, and apply the law to the circumstances; and to represent Mr. Copeland-Jackson's lawful objectives and presenting for adjudication Mr. Copeland-Jackson's lawful claims, issues or defenses. Mr. Kearns and Mr. Lynch, respectively, breached these duties.

6.  The case record and court transcripts reflect and contain admissions wherein Mr. Kearns admitted that he had little experience in child sex abuse cases and failed to properly prepare the case for trial in such a way as to render effective assistance of counsel consistent with the Constitution. Mr. Kearns did not interview Mr. Copeland-Jackson's accusers nor their parents. Mr. Kearns did not interview Mr. Copeland-Jackson's employers nor secure his academic and work records. Mr. Kearns did not conduct any depositions or otherwise secure witness statements, nor issue subpoenas to secure related documents and evidence to establish Mr. Copeland-Jackson's alibi. Interviewing the accusers and securing evidence to negate the charges were essential to conducting discovery in Mr. Copeland-Jackson's case, and the failure of Mr. Kearns to conduct this discovery negatively impacted the case in such a way as to have deprived Mr. Copeland-Jackson's right to a full and fair opportunity to present a complete defense. Specifically, there was no way Mr. Kearns could have gone to trial in this case. His only choice was to force a plea agreement on Mr. Copeland-Jackson and avoi  a trial.

7.  The failure of Mr. Kearns to conduct or complete discovery, prepare the alibi defense and prepare for trial, caused Mr. Copeland-Jackson to compromise with the prosecution by pleading no contest to reduced charges. However, gross sexual imposition which was intended to be charged in the Bill of Information, is not a lesser included offense of sexual battery, which was charged in the indictment. Mr. Kearns should not have permitted Mr. Copeland-Jackson to plead and the court should not have accepted pleas to the lesser GSI charges, GSI charges, which may have waived double jeopardy protection, and by the pleas, permitted the prosecution a second opportunity to convict Mr. Copeland-Jackson using the same underlying situation.

8.  At the change of plea hearing, the trial was terminated, the indictment was dismissed, the jury was discharged and the court accepted and proceeded on the

Bill of Information. The prosecution intended to charge Mr. Copeland-Jackson with violations of O.R.C. 2907.05(A)(5), gross sexual imposition in the Bill of Information. No contest pleas were entered and the prosecution gave its explanation of the circumstances to provide a factual basis for the charge. The court accepted the pleas and found Mr. Copeland-Jackson guilty, and later sentenced him to the maximum time of imprisonment on each count to be served consecutively. In addition, the court labeled Mr. Copeland-Jackson a habitual sex offender.

9. In my professional opinion, the Bill of Information is invalid and void. It omits "advanced" as part of the age element, and omits the knowledge clause required to establish the culpable mental state for the offense. The Bill did not charge gross sexual imposition due to its omission of essential and material statutory elements of the offense.

10. The trial court did not have jurisdiction over the case to proceed to accept the plea and to enter the judgment and sentence due to the deficiencies in the charging document.

11. Because of its omissions, the Bill of Information did not provide adequate notice or inform Mr. Copeland-Jackson of the nature and cause of the accusation in such a way as to provide an understanding of the charge. The prosecution and the court changed the ingredients of O.R.C. 2907.05(A)(5) gross sexual imposition. Mr. Copeland-Jackson was not adequately charged with or informed of the elements of gross sexual imposition in order to enter a knowing, intelligent, and voluntary plea to the crime.

12. The prosecution's factual basis failed to charge that the single alleged incident occurred within the jurisdiction of the trial court, and failed to establish a mental condition, advanced age, or the culpable mental state. The state's report changed the ingredients of the crime and was insufficient to support the Bill of Information and to support a charge of, a conviction of, and a sentence for gross sexual imposition.

13. The prosecution stated that the ages of both accusers were 13 years old at the time of the single alleged incident. On appeal, the prosecution misrepresented the ages of the accusers. Mr. Lynch also misrepresented the ages of the accusers. The prosecution filed a statement indicating that the accusers were 14 and 13 years old respectively at the time of the single, alleged incident. It is misconduct for the prosecution to misrepresent facts to the court concerning a material element of the offense in order to secure a conviction., Whatever the ages of the accusers, the ages did not constitute the advanced age needed to secure a conviction under O.R.C. 2907.05(A)(5). Mr. Copeland-Jackson was convicted and sentenced for abusing people of advanced age, which his accusers were 13 and 14 years old, respectively. Innocence or guilt, notwithstanding, this represented an unconstitutional application of the statute. Mr. Copeland-Jackson should have

been acquitted of gross sexual imposition based on the applicable law and the facts as alleged.

14. In my professional opinion, Mr. Copeland-Jackson's conviction and sentence are unconstitutional and contrary to law because he was not charged with gross sexual imposition due to the deficiencies in the Bill of Information and the court lacked jurisdiction over the case to proceed to judgment and sentence, and insufficient information was presented by the state to support the conviction and sentence. Further, because Mr. Copeland-Jackson did not have any prior criminal adjudications, his counsel should not have allowed Mr. Copeland-Jackson to stipulate to being labeled a habitual sex offender. By definition in O.R.C. 2950.01, he is not a habitual sex offender. The Court should not have allowed the stipulation. Mr. Kearn's lack of knowledge regarding this issue is clear and obvious, fully supporting his earlier admission that he was unqualified to represent a sex crime defendant.

15. On appeal, Mr. Lynch was appointed to review the record and challenge those errors in order to secure Mr. Copeland-Jackson's acquittal. The record reflects the communications between Mr. Copeland-Jackson and Mr. Lynch. The correspondence reflects Mr. Copeland-Jackson's experience with trial counsel, his claim of innocence and his requests that Mr. Lynch appeal his conviction. The correspondence reflects Mr. Lynch's representation that he intended to review the record and raise Mr. Copeland-Jackson's claims.

16. Mr. Copeland-Jackson's pleas agreement was a contract between he and the state that was conditioned on the court's acceptance of the pleas. Mr. Copeland-Jackson did not agree by his pleas to be convicted, or by the plea agreement, to waive the errors cited above, nor did he waive errors concerning the performance of counsel and the trial court. Each of these errors were within the scope of Mr. Kearn's defense and Mr. Lynch's appellate review and advocacy.

17. Mr. Lynch should and could have effectively raised the errors of the court and the ineffective assistance of trial counsel on appeal based on any of the errors identified above and would have been successful. While Mr. Lynch did not have to independently raise every error, he had the duty to appeal those issues that would have secured Mr. Copeland-Jackson's acquittal, the primary being ineffectiveness of counsel.

18. Mr. Lynch agreed to appeal Mr. Copeland-Jackson's conviction and sentence. Mr. Lynch had the duty to review the entire record for error and to argue that the conviction and sentence were not supported by the record and/or were contrary to law. To effectively present this claim, Mr. Lynch could have argued that based on the status of the record Mr. Copeland-Jackson was entitled to an acquittal, not withstanding the errors surrounding the Bill of Information and the acceptance of the pleas, when the prosecution failed to establish the elements of gross sexual

imposition before the trial court in its report to the court pursuant to the pleas. Mr. Kearns could have also argued this claim.

19. Mr. Kearns breached his duties to Mr. Copeland-Jackson by failing to prevent the cited errors above by legally challenging them in the first instance in the trial court.

20. Mr. Lynch breached his duties to Mr. Copeland-Jackson by failing to argue on appeal that trial counsel was constitutionally ineffective because he allowed and/or did not present or challenge the errors cited above, which allowed Mr. Copeland-Jackson to be convicted and sentenced based on erroneous and insufficient information through unconstitutional proceedings. Further, Mr. Lynch breached his duties by failing to review the entire record and protecting Mr. Copeland-Jackson's rights by appealing the errors cited above. Due to the breach of duties by Mr. Lynch, Mr. Copeland-Jackson's conviction and sentence should have been reversed on appeal and the label as a habitual sex offender would most certainly have been reversed.

FURTHER SAYETH AFFIANT NAUGHT.

_Wayne D. Miller_
Wayne D. Miller

Sworn to and subscribed to before me, a Notary Public in and for the State of Ohio on this _28th_ day of July, 2003.

_Rhonda S. McIntyre_
Notary Public
RHONDA S. McINTYRE

RHONDA McINTYRE
Notary Public, State of Ohio
My Commission Expires 03-09-04
Section 147.03

IN THE COURT OF COMMON PLEAS OF ASHLAND COUNTY, OHIO

DAVID COPELAND-JACKSON,                    :            Case No. 01-CIV-36628

           Plaintiff,                    :            Judge James DeWeese
                                            Assigned Judge

      vs.                                        :

MR. JOSEPH P. KEARNS, JR., et al,           :

           Defendants.                    :            **STATEMENT**

      Now comes Christopher R. Tunnell, Assistant Prosecuting Attorney, pursuant to Order of
the Court dated December 20, 2001 and states as follows: the information available in the
records of the office of the Prosecuting Attorney indicate Joshua Helms, DOB: 02-05-86, Joseph
Cutlip, DOB: 05-30-85.

                                  Respectfully submitted,

                                  CHRISTOPHER R. TUNNELL (0072036)
                                  Assistant Prosecuting Attorney

## CERTIFICATE OF SERVICE

      This is to certify that a true and correct copy of the foregoing Motion was mailed by
ordinary U. S. Mail, postage prepaid, to David Copeland-Jackson, Inmate No. A389-768,
Pickaway Correctional Institution, P.O. Box 209, Orient, Ohio 43146-0209; Thomas L. Mason,
153 West Main Street, Ashland, Ohio 44805, Warden William Tanner, Pickaway Correctional
Institution, P.O. Box 209, Orient, Ohio 43146, this 27ᵗʰ day of December, 2001.

                                  CHRISTOPHER R. TUNNELL (0072036)
                                  Assistant Prosecuting Attorney

ROBERT R DeSANTO
ASHLAND COUNTY
PROSECUTING ATTORNEY
SUITE 307
ORANGE TREE SQUARE
ASHLAND, OHIO 44805
(419) 289-8857
FAX (419) 281-3865



# Hart Investigations, Inc.

600 Hawthorne Lane
P.O. Box 1401
Mansfield, OH 44901
(419) 756-5000

R. Gene Hart, C.F.E.
President

**To:**     David B. Copeland-Jackson

**Date:**   July 15, 2003
           In:   0900 Hours
           Out:  1030 Hours

**Subject:**  David B. Copeland-Jackson
            290 N. Main Street
            Mansfield, Ohio  44902

            SSN:  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
            DOB 10/31/1972
            Public Service  419.524.5013

---

## Predication

This truth verification examination was predicated upon a request by David B. Copeland-Jackson.

## Scope

The scope of this truth verification examination was limited to the subject's honesty involving gross sexual imposition with Joseph Cutlip.

## Pre-Test Interview

During the pre-test interview subject stated that he was convicted of gross sexual imposition in Ashland County Court in June 2000. He pled no contest to the offense because his attorney told him "it was election year, this is Ashland, you are black and you are going to go to prison." He also told him that if he pled no contest as a first offense he would not serve any time. The offense was alleged to have occurred on Friday November 19, 1999 around 10:00 a.m. but did not come to light until January 2000 when Pastor Baucon spoke with Joseph Cutlip. David continued that he first met Joseph Cutlip in September of 1999 when Pastor Laurence Baucon gave him a tour of the church and Joseph Cutlip was a student

CVSA Test
David B. Copeland-Jackson
July 16, 2003

who was attending the academy. The next time that David saw Joseph Cutlip was on October 31, 1999 at the Halloween service. At the service Pastor Baucon was praying with each individual at the altar. David asked Joseph Cutlip if he had anything to pray for and Joseph replied that he wanted to pray for his brother Allen to stop abusing him. David told Joseph to inform the Pastor of the abuse in addition to praying.

David did not see Joseph again until January 2, 2000 when David approached Joseph at the church and asked him how things were going and if he had told the pastor about his brother Allen. Joseph responded, no, and David informed him that he (David) was going to have to mention it to the pastor if Joseph did not tell him. David and his girlfriend left for Denny's and the pastor was to meet them there after he locked up, but he never showed. At 6 P.M. a detective from the Ashland Police Department came to David's residence and asked him to come down to the station. At the station David was informed of the accusation and at that time he gave them a statement and agreed to take a polygraph test immediately. David was taken into a room where the polygraph was located and at that time was informed that it was broken. David agreed to a search of his apartment which the police did search, but nothing was confiscated from the apartment.

This was the last contact that David had with the police until an indictment was return in March of 2000 accusing him of gross sexual imposition. David states that he is not gay, has not had any sexual contact with any males at any time and he is willing to take any type of truth verification test that is offered to him by any department or agency.

David continued that he pled no contest at this attorney's urging since the attorney had not properly prepared for trial and that the judge insisted that no additional time be given and that they proceed immediately. David states that his attorney had convinced him that the cards were stacked against him since he was from out of state and black with an all white jury.

## Report

On July 16, 2003, David B. Copeland-Jackson reported to my office in Mansfield, Ohio. A series of 11 questions were formulated to be used in a General Series testing sequence. I obtained the necessary release form, conducted the interview, and hereby submit the results. The following relevant questions were interspersed with irrelevant and control questions:

2

CVSA Test
David B. Copeland-Jackson
July 16, 2003

1.    Did you ever have any sexual contact with Joseph Cutlip?
         Answer: No

2.    Did you pay Joseph Cutlip to perform oral sex on him?
         Answer: No

3.    Did Attorney Kearns tell you that you wouldn't go to prison if you pled
      no contest?
         Answer: Yes

### Post Test Interview

During the post-test interview the results of the initial examination were
discussed with Mr. Copeland-Jackson. It was determined a second examination
should be conducted. The second examination utilized the same format as the
initial examination as well as the same relevant questions. The results of the
second were the same as the initial examination.

### Conclusion

Based on my training and experience it is my opinion that the subject did answer
the relevant questions truthfully. Subject is willing to be tested by any outside
agency regarding this specific incident and additionally that he has never had
any sexual contact with any males at any time.

R. Gene Hart, CVSA Examiner
600 Hawthorne Lane
Mansfield, Ohio 44907
419-756-5000

**Experience:**
I have run hundreds of lie detection tests over the last 22 years for the Courts, various law
enforcement agencies, fire departments, and attorneys. I am a member in good standing with the
Midwest Association of Voice Stress Analysis. I possess a Bachelor's Degree in Psychology from
Urbana University.

3

CVSA Test
David B. Copeland-Jackson
July 16, 2003

*CVSA is the same instrument that is used by the Mansfield Police Department, the Richland County Sheriff's Department and Children Services.

*Ronald L. Weiner, Ph.D.*
*Executive Director*
*Lesley Adachi Stamm, MSW*
*Clinical Director*
*LaToya Cheatham, MSW*
*Social Worker*
*Sam Walker, MA*
*Senior Clinical Associate*
*Steve Nesspor, MS*
*Senior Case Manager*
*Kayla Richardson, BA*
*Case Manager*

**Clinical & Forensic Associates, P.C.**
**733 15th Street, NW**
**Suite 1037**
**Washington, DC 20005**
**202-367-0234**
Fax: 202-367-0235

April 15, 2005

Mr. David Copeland Jackson
2542 Naylor Road, S.E.
Apt. #201
Washington, D.C. 20020

Dear Mr. Jackson:

    The purpose of this letter is to provide you with a written statement regarding your offense specific polygraph results completed under my direction with our polygraph expert, Mr. Jerry Shockley.

    As you are aware, you successfully participated in the completion of your psychosexual risk assessment with our clinic on November 15, 2004. I held two sessions with you, November 10, 2004 (2.0 Hours) and again on November 15, 2004 (1.5 Hours). You informed me during the assessment interview that you had been falsely accused of committing the sexual offenses charged. We reviewed the history of your involvement with the boys who made complaints against you. I completed your assessment report on December 13, 2004 and forwarded the report to CSO Nicole Salvano and recommended that you be given an offense specific polygraph examination to determine if you were in need of treatment at our clinic. My report indicated that sex offender treatment would be recommended involving both individual and group sessions for a period twelve to fifteen months in the event that you failed the polygraph examination indicating deception on your part.

I met with you on February 4, 2005 for purposes of reviewing the suggested areas and questions you would likely be asked by our polygraph examiner, Mr. Shockley. I reviewed the questions with you and you indicated that the questions appeared to be reasonable and that you had no problems complying with taking said examination. I scheduled the examination with you for the same day (February 4, 2005).

The following offense specific polygraph questions were asked of you relative to the offense you were convicted of in the State of Ohio:

1.  Q. Did you at any time take Joseph Cutlip to a movie theatre for purposes of engaging him in sexual activity?
    A. No.

2.  Q. Did you at any time ever engage Joseph Cutlip in any sexual activity?
    A. No.

3.  Q. Did you at any time have Joseph Cutlip in your home with others or alone?
    A. No.

Mr. Shockley informed me by letter dated February 4, 2005 that you showed no significant physiological responses to the above questions. You were then asked the following relevant questions.

1.  Q. Did you at any time encourage, promote, or suggest to Jason Clarke that he could target Joseph Cutlip or Joshua Helms for sexual activity?
    A. No.

2.  Q. Did you at any time ever engage Joshua Helms in any sexual activity?
    A. No.

3.  Q. Did you at any time have Joshua Helms at your home alone or with others?
    A. No.

Mr. Shockley informed me by letter dated February 4, 2005 that you showed no significant physiological responses to the above questions. He concluded in his letter that in his professional opinion that you were being truthful when you answered the above questions on both examinations.

Based on the results of your polygraph test results I informed you that you would not be recommended for sexual offender treatment at our clinic and advised you that I would forward my recommendation to the CSOSA (Court Services and Offender Supervision Agency). It was my understanding from CSOSA that my recommendation was accepted and that you have not been referred for sexual offender treatment.

I trust that this letter provides you with the information you requested. As I told you on several occasions (both by phone and in person when you came to my office), I do not have authority to specifically provide you with a copy of the report sent to me by Mr. Shockley. Since our clinic is under contract with CSOSA, we must follow their directives relative to our work and official documents in our files. I was instructed not to provide you with the specific report from Mr. Shockley relative to you polygraph results. I do not believe that my forwarding you a letter of what you have been verbally told violates my contractual responsibilities to CSOSA.

Sincerely yours,

Ronald I. Weiner, Ph.D., LICSW
Executive Director
D.C. License # LC 300525

In the Municipal Court of Mansfield, Ohio
Small Claims Division

Peter Brandel,
            Plaintiff,

v.

Joseph P. Cutlip,
            Defendant.

FILED

MAY 2 1 2007

MUNICIPAL COURT
MANSFIELD, OHIO
DANIEL R. SMITH, CLERK

Case Number: 2007 CVI 01462

### Motion to Dismiss

Plaintiff, Peter Brandel, moves to dismiss this cause without prejudice. The parties had a settlement conference in regards to the cause of action in Plaintiff's complaint. During the settlement conference, Defendant disclosed his reasoning for his actions. Defendant endorsed the attached affidavit (see attached Exhibit 1), wherein Defendant stated:

Defendant was aware of Plaintiff's civil rights work;

Defendant feared that Plaintiff's present work would disclose a previously unrelated issue involving the Defendant and one of Plaintiff's clients; and,

Defendant committed his act because Defendant wanted to stop Plaintiff's present civil right's work.

Due to Defendant's candor and contrition, Plaintiff agreed to settle this case and stipulate to a dismissal of the complaint provided that Defendant voluntarily makes a full disclosure of the underlying circumstances that gave rise to this dispute, and commit to repaying Plaintiff for his loss. Defendant agreed.

The parties have since reached an acceptable settlement on the cause of action in Plaintiff's complaint without need for further action in this court. Plaintiff, therefore, moves this court to dismiss this cause without delay.

Respectfully Submitted,

Peter Brandel
Plaintiff

### Certificate of Service

I certify that a true copy of this motion was hand-delivered to the Defendant on May 18, 2007.

Peter Brandel
Plaintiff

*Exhibit 1*

# In the Municipal Court of Mansfield, Ohio
## Small Claims Division

Peter Brandel,
      Plaintiff,

v.
                                       Case Number: 2007 CVI 01462

Joseph P. Cutlip,
      Defendant.

### *Affidavit of Joseph P. Cutlip*

I, Joseph P. Cutlip, first, being duly sworn according to law and under the penalty of perjury, do hereby depose and assert that the following information is true and accurate.

1. My name is Joseph P. Cutlip and I live at 273 Lee Avenue, Ashland, Ohio 44805.

2. I have considered and fully understand the meaning of this statement; and, I have knowingly, intelligently, and voluntarily made this statement without reservations.

3. I intend this statement for all legal purposes to clarify (or otherwise take the place of) all other public and private communications made by, or ascribed to, me concerning these subjects.

4. I have never reported or suffered from, or otherwise have been diagnosed nor treated for, a psychological or mental condition, disorder, or disability of any kind as a minor or as an adult that has substantially impaired my functioning.

5. I have never experienced or suffered non-family physical or sexual victimization.

6. I am aware of Peter Brandel and his work with persons wrongly accused and convicted of crime. I did have an interview with Mr. Brandel and willing admitted each of the facts in this sworn statement or declaration.

7. I am aware of his work with/for David Copeland-Jackson. I was the complaining witness against Mr. Jackson in 2000. Joshua Helms and I were sexually involved and at the time, we did not want anyone to discover that we were actively, sexually involved.

*Exhibit 1*

8. I had previously admitted to Mr. Jackson that my brother, Allen, had sexually abused me. Mr. Jackson told me that he was going to alert the pastor of my admission. I told my brother that Mr. Jackson was going to tell on us.

9. My brother was aware that Joshua and I were sexually involved. Allen told us that we had to keep Mr. Jackson from telling and that if we didn't help him, then he was going to tell everybody that me and Joshua were sexually involved. Joshua and I were very afraid and did what Allen told us. I was fourteen years old and Joshua was thirteen years old at the time.

10. I went to tell the pastor that Mr. Jackson had abused me and Joshua- thinking that Mr. Jackson would not be allowed back at the church. Joshua Helms and I accused Mr. Jackson of performing sex acts on us. I did not intend for Mr. Jackson to get arrested.

11. Mr. Jackson did not have sexual contact of any kind with me- at any time, in any place. I did not observe Mr. Jackson having sexual contact of any kind with Joshua Helms- at any time, in any place.

12. The police and my parents and brother kept telling me what to say. After a while, the whole thing took on a life of its own. Every time I tried to correct the story, I was threatened that I would be arrested so I agreed with everybody and Mr. Jackson was arrested and was later sent to prison. Neither of Mr. Jackson's lawyers contacted me.

13. Over the years as I got older, I realized what I had done and wanted to tell the truth, but feared that I would be arrested for lying on Mr. Jackson. When I realized that Mr. Brandel was helping Mr. Jackson, I feared Mr. Brandel would discover the truth that Mr. Jackson never had any kind of sex with me and then I would get arrested.

14. I did not want nor intend to harm Mr. Brandel, but I had acted in anger and was blinded by fear when I took his property. My anger and fear regrettably and mistakenly lead me to believe that taking Mr. Brandel's property would stop his civil rights work on Mr. Jackson's behalf.

15. I am so sorry for all of this and wish that none of this had ever taken place. I agreed to repay Mr. Brandel for any loss or damages.

*Exhibit 1*

Further, Affiant sayeth nought.

Joseph P. Cutlip

5-8-07          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
Date            Social Security

Sworn to and Subscribed in My Presence on this 8ᵗʰ day of *May, 2007,*
2007.

Charlotte M. Newell
Notary Public

Charlotte S. McNaull
Notary Public, State of Ohio
My Commission Expires 4/3/2012

**IN THE MUNICIPAL COURT OF MANSFIELD, OHIO**
**SMALL CLAIMS DIVISION**

PETER BRANDEL,
        Plaintiff,

vs.                                          CASE NO:   2007-CVI-1462

JOSEPH P. CUTLIP,
        Defendant.


**JUDGMENT ENTRY**


        The herein matter came on for hearing this 25TH day of May, 2007.  The Court
being notified that the Plaintiff filed a Motion to Dismiss and for good cause shown, the
case is hereby Dismissed with prejudice to future action. Costs paid.


        **IT IS SO ORDERED.**


                                        _____
                                        Jerry Ault, Judge


cc:    Brandel – rm                    **FILED**
       Cutlip – rm
                                        MAY 2 5 2007

                                        MUNICIPAL COURT
                                        MANSFIELD, OHIO
                                        DANIEL R SMITH, CLERK

# In the Municipal Court of Mansfield, Ohio
## Small Claims Division

Peter Brandel,
     Plaintiff,

v.

                              Case Number: 2007 CVI 01462

Joseph P. Cutlip,
     Defendant.

### *Motion to Dismiss*

     Defendant moves this Court to dismiss this case, pursuant to the attached affidavit.

                            _Joseph P. Cutlip_
                              Joseph P. Cutlip
                              Defendant

### Certificate of Service

I, Joseph Cutlip, do hereby certify that a true copy of this motion was personally delivered to the plaintiff on this _____ day of May, 2007.

                              _Joseph P. Cutlip_
                              Joseph Cutlip
                              Defendant

## In the Municipal Court of Mansfield, Ohio
### Small Claims Division

Peter Brandel,
      Plaintiff,

v.                           Case Number: 2007 CVI 01462

Joseph P. Cutlip,
      Defendant.

### *Affidavit of Joseph P. Cutlip*

I, Joseph P. Cutlip, first, being duly sworn according to law and under the penalty of perjury, do hereby depose and assert that the following information is true and accurate.

1. My name is Joseph P. Cutlip and I live at 273 Lee Avenue, Ashland, Ohio 44805.

2. I have considered and fully understand the meaning of this statement; and, I have knowingly, intelligently, and voluntarily made this statement without reservations.

3. I intend this statement for all legal purposes to clarify (or otherwise take the place of) all other public and private communications made by, or ascribed to, me concerning these subjects.

4. I have never reported or suffered from, or otherwise have been diagnosed nor treated for, a psychological or mental condition, disorder, or disability of any kind as a minor or as an adult that has substantially impaired my functioning.

5. I have never experienced or suffered non-family physical or sexual victimization.

6. I am aware of Peter Brandel and his work with persons wrongly accused and convicted of crime. I did have an interview with Mr. Brandel and willing admitted each of the facts in this sworn statement or declaration.

7. I am aware of his work with/for David Copeland-Jackson. I was the complaining witness against Mr. Jackson in 2000. Joshua Helms and I were sexually involved and at the time, we did not want anyone to discover that we were actively, sexually involved.

8. I had previously admitted to Mr. Jackson that my brother, Allen, had sexually abused me. Mr. Jackson told me that he was going to alert the pastor of my admission. I told my brother that Mr. Jackson was going to tell on us.

9. My brother was aware that Joshua and I were sexually involved. Allen told us that we had to keep Mr. Jackson from telling and that if we didn't help him, then he was going to tell everybody that me and Joshua were sexually involved. Joshua and I were very afraid and did what Allen told us. I was fourteen years old and Joshua was thirteen years old at the time.

10. I went to tell the pastor that Mr. Jackson had abused me and Joshua- thinking that Mr. Jackson would not be allowed back at the church. Joshua Helms and I accused Mr. Jackson of performing sex acts on us. I did not intend for Mr. Jackson to get arrested.

11. Mr. Jackson did not have sexual contact of any kind with me- at any time, in any place. I did not observe Mr. Jackson having sexual contact of any kind with Joshua Helms- at any time, in any place.

12. The police and my parents and brother kept telling me what to say. After a while, the whole thing took on a life of its own. Every time I tried to correct the story, I was threatened that I would be arrested so I agreed with everybody and Mr. Jackson was arrested and was later sent to prison. Neither of Mr. Jackson's lawyers contacted me.

13. Over the years as I got older, I realized what I had done and wanted to tell the truth, but feared that I would be arrested for lying on Mr. Jackson. When I realized that Mr. Brandel was helping Mr. Jackson, I feared Mr. Brandel would discover the truth that Mr. Jackson never had any kind of sex with me and then I would get arrested.

14. I did not want nor intend to harm Mr. Brandel, but I had acted in anger and was blinded by fear when I took his property. My anger and fear regrettably and mistakenly lead me to believe that taking Mr. Brandel's property would stop his civil rights work on Mr. Jackson's behalf.

15. I am so sorry for all of this and wish that none of this had ever taken place. I agreed to repay Mr. Brandel for any loss or damages.

Further, Affiant sayeth nought.

_Joseph P. Cutlip_
Joseph P. Cutlip

_5-8-07_          _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_
Date              Social Security

Sworn to and Subscribed in My Presence on this _8th_ day of _May 2007_,
2007.

_Charlotte M Newell_
Notary Public

Charlotte S. McNeull
Notary Public, State of Ohio
My Commission Expires _4/3/2012_

State of Ohio

ss.

County of Ashland

### Statement of Charlotte S. McNaull

Pursuant to section 1746 of title 28 of the United States Code, I declare (or certify, verify, or state) under penalty of perjury that the following is true and correct.

1. My name is Charlotte McNaull and I am a duly commissioned notary of the state of Ohio.

2. I have reviewed the attached exhibit, Affidavit of Joseph P.Cutlip.

3. Mr. Cutlip did appear before me on May 8, 2007 with satisfactory proof to establish his identity and did endorse the jurat and sign the document in my presence. I did ask Mr. Cutlip if he was signing under his own free-will and without duress. I explained that duress meant whether anyone was forcing him to sign or not. Mr. Cutlip stated to me that he was signing under his own free-will and without duress.

4. The document does reflect my official signature and bears my official notarial seal.

Executed on __18th__ day of June, 2007.

_Charlotte S. McNaull_

Charlotte S. McNaull

Address:

__1577 CR 1575__

__Ashland, OH 44805__

Charlotte S. McNaull
Notary Public, State of Ohio
My Commission Expires 4/5/2012

# In the Municipal Court of Mansfield, Ohio
## Small Claims Division

Peter Brandel,
     Plaintiff,

v.                        Case Number: 2007 CVI 01462

Joseph P. Cutlip,
     Defendant.

### *Affidavit of Joseph P. Cutlip*

I, Joseph P. Cutlip, first, being duly sworn according to law and under the penalty of perjury, do hereby depose and assert that the following information is true and accurate.

1. My name is Joseph P. Cutlip and I live at 273 Lee Avenue, Ashland, Ohio 44805.

2. I have considered and fully understand the meaning of this statement; and, I have knowingly, intelligently, and voluntarily made this statement without reservations.

3. I intend this statement for all legal purposes to clarify (or otherwise take the place of) all other public and private communications made by, or ascribed to, me concerning these subjects.

4. I have never reported or suffered from, or otherwise have been diagnosed nor treated for, a psychological or mental condition, disorder, or disability of any kind as a minor or as an adult that has substantially impaired my functioning.

5. I have never experienced or suffered non-family physical or sexual victimization.

6. I am aware of Peter Brandel and his work with persons wrongly accused and convicted of crime. I did have an interview with Mr. Brandel and willing admitted each of the facts in this sworn statement or declaration.

7. I am aware of his work with/for David Copeland-Jackson. I was the complaining witness against Mr. Jackson in 2000. Joshua Helms and I were sexually involved and at the time, we did not want anyone to discover that we were actively, sexually involved.

8. I had previously admitted to Mr. Jackson that my brother, Allen, had sexually abused me. Mr. Jackson told me that he was going to alert the pastor of my admission. I told my brother that Mr. Jackson was going to tell on us.

9. My brother was aware that Joshua and I were sexually involved. Allen told us that we had to keep Mr. Jackson from telling and that if we didn't help him, then he was going to tell everybody that me and Joshua were sexually involved. Joshua and I were very afraid and did what Allen told us. I was fourteen years old and Joshua was thirteen years old at the time.

10. I went to tell the pastor that Mr. Jackson had abused me and Joshua- thinking that Mr. Jackson would not be allowed back at the church. Joshua Helms and I accused Mr. Jackson of performing sex acts on us. I did not intend for Mr. Jackson to get arrested.

11. Mr. Jackson did not have sexual contact of any kind with me- at any time, in any place. I did not observe Mr. Jackson having sexual contact of any kind with Joshua Helms- at any time, in any place.

12. The police and my parents and brother kept telling me what to say. After a while, the whole thing took on a life of its own. Every time I tried to correct the story, I was threatened that I would be arrested so I agreed with everybody and Mr. Jackson was arrested and was later sent to prison. Neither of Mr. Jackson's lawyers contacted me.

13. Over the years as I got older, I realized what I had done and wanted to tell the truth, but feared that I would be arrested for lying on Mr. Jackson. When I realized that Mr. Brandel was helping Mr. Jackson, I feared Mr. Brandel would discover the truth that Mr. Jackson never had any kind of sex with me and then I would get arrested.

14. I did not want nor intend to harm Mr. Brandel, but I had acted in anger and was blinded by fear when I took his property. My anger and fear regrettably and mistakenly lead me to believe that taking Mr. Brandel's property would stop his civil rights work on Mr. Jackson's behalf.

15. I am so sorry for all of this and wish that none of this had ever taken place. I agreed to repay Mr. Brandel for any loss or damages.

Further, Affiant sayeth nought.

Joseph P. Cutlip

5-8-07
Date

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
Social Security

Sworn to and Subscribed in My Presence on this 8ᵗʰ day of _May 2007_,
2007.

Notary Public

Charlotte S. McNeal
Notary Public, State of Ohio,
My Commission Expires 4/3/2012